## FINLEY et al. v. PAFFORD et al.
### No. 4710.

Court of Civil Appeals of Texas. Amarillo.
Feb. 15, 1937.

Rehearing Denied April 5, 1937.

164

Northcutt & Jordan, of Amarillo, for plaintiffs in error.

Otis Trulove, of Amarillo, and J. S. Stallings, of Claude, for defendants in error J. L. Pafford, First Nat. Bank, and Claude National Farm Loan Ass'n.

Lewis Rogers and Chas. L. Terry, both of Houston, for defendant in error Federal Land Bank.

MARTIN, Justice.

The parties will carry here their trial court designation.

S. W. Calliham and Louise Calliham were husband and wife. ·Both died, the husband first, and intestate. No children were born of their marriage. Mrs. Louise Calliham left a will, naming the defendants herein as the devisees of the property in controversy. Plaintiffs are the heirs of S. W. Calliham, deceased, being the sisters and the children of deceased brothers and sisters of S. W. Calliham, deceased. They filed this suit for an undivided one-half interest in two sections of land in Armstrong county, naming the above parties and the Federal Land Bank of Houston and another as defendants.

The plaintiffs allege and claim that the property in controversy was the separate estate of S. W. Calliham, deceased; the defendants, that same was the community property of S. W. Calliham and his wife, the title to which vested in the wife upon the death of the husband, intestate. Much of the testimony offered by plaintiffs was ruled inadmissible as in violation of article 3716, known to the legal profession as the "dead man statute." The trial court peremptorily instructed ·the jury to find for defendants. His action in so doing and his rulings upon the said evidence are the only legal issues here worthy of mention.

The background of this controversy is:

S. W. Calliham and Louise Calliham were married in 1896. In 1899, S. W. Calliham was awarded school section 128, as an actual settler at $1 per acre. This presumably was under a right theretofore acquired from one Sadler in 1898. On December 10, 1901, Louis Garver and wife conveyed section 129 to said S. W. Calli-

ham, the deed reciting. the payment of $433.34 cash and notes aggregating $1,-566.66 as a consideration therefor. These two sections are those in controversy here. On September 7, 1898, A. H. Sadler and wife executed a bill of sale to all improvements on section 128 for a recited consideration of $1,050·cash, paid by S. W. Calliham, deceased. It is the claim of plaintiffs that section 128 was purchased by S. W. Calliham with funds inherited from his mother's estate, and that section 129 was purchased by Andy Calliham, the father of S. W. Calliham, and given to him in 1901. The mother of S. W. Calliham died at the then parental home of the Callihams in Collin county, May 28, 1897. Thereafter, and prior to the purchase of the land in controversy, S. W. Calliham received from his mother's estate about $1,200, one-half cash and one-half notes.

■ Some of the propositions advanced by plaintiffs are not properly supported by statements. The trial court erroneously excluded some of the evidence offered. However, considering all propositions advanced, and all admissible evidence excluded, there is still, in our opinion, not sufficient evidence to go to the jury on the issue of whether or not S. W. Calliham's separate estate went into the purchase of this land. We have detailed above all essential facts proven and offered to be proven by admissible evidence. This goes no further than to show the possession of separate funds by S. W. Calliham prior to the purchase of the land in controversy. This alone in cases of this character has many times been held insufficient. We quote:

"It has been declared that mutations of separate ·property must be clearly traced, or clearly and indisputably traced, or that the evidence must be clear and satisfactory, and that the fact that property acquired during marriage represents a mere mutation of separate property will not be inferred except from circumstances of a conclusive tendency. * * *

"Such consideration must move immediately and contractually from the separate estate into the new acquisition, and generally the mutation must be specifically traced, proof of possession of separate means not alone being sufficient." 31 C.J. p. 57.

"Where separate and community property are confused or blended so that the separate property cannot be identified, the presumption in favor of the community

casts the whole into the community. * * *

"In any event the loss of the separate property results from the presumption in favor of the community in the absence of identification of the separate property, and not from the mere fact of intermixture." 31 C.J. p. 56.

Many Texas cases are cited in support of the above.

Again:

"The evidence in support of this claim was the testimony of Wright as to the amount of his means at the date of his marriage in 1860, estimated by him at over $100,000; that his wife, so far as he knew, had nothing, save an interest in an estate in New Jersey; and that during his marriage he did not accumulate property, but, on the contrary, lost largely. He says that the means and money used in the purchase of the lots were acquired before Mrs. Wright became his wife; but, from his whole testimony, it is evident that this is an inference from his alleged failure during his marriage to add to his property, rather than a statement of his ability to trace the particular means used in the purchase. Outside of his own testimony, there is none other on the point save that of C. T. Wright, that his uncle (Reuben Wright) had large means when he married Mrs. Wright, and, so far as witness knew, she had nothing; and on cross-examination he said that it was his impression that Reuben Wright paid for the lots with his separate means, but that he did not know of his own knowledge. Some of the lots were purchased in 1863, and others in 1868, eight years after the marriage.

"Our opinion is, that the court did not err in holding that this evidence was too indefinite to rebut the presumption established by the statute, that property acquired during marriage is community property, and in refusing to submit that question to the jury. The proof should have been 'clear and conclusive.' (Love v. Robertson, 7 Tex. [6], 11 [56 Am.Dec. 41].) It was not a case where specific property, proven to have been separate estate, was exchanged; but a case in which it was necessary to trace the means through mutations and changes, and this should have been done 'clearly and indisputably.' (Chapman v. Allen, 15 Tex. [278], 283) The means invested should have been traced back to the separate estate, not through indefinite channels and unknown changes, but connectedly and plain-

ly." Schmeltz v. Garey, 49 Tex. 49, at pages 60-61.

"Mere mutations of form do not of themselves work a transmutation of the character of property, as being community or separate, after once it has been cast either into the community, or to the separate estate of the husband or the wife; and the same is true of the commingling of the separate and community property, the separate property remaining separate as long as it can be identified. It is where, by such processes, the identity of separate property is lost that, by the operation of the presumption in favor of the community, a transmutation takes place." 31 C.J. p. 72.

"The principle of law is established beyond question that real estate acquired by purchase during the existence of the married relation, no matter whether the deed be taken in the name of the husband or wife or both, creates the presumption that such property is common property. While this presumption is not conclusive, the burden of proof rests upon the party affirming the fact to be to the contrary, and such fact must be established by clear and convincing evidence. Ramsdell v. Fuller, .28 Cal. [37], 42 [87 Am.Dec. 103]; Morgan v. Lones, 78 Cal. [58], 62, 20 P. 248. In order that property may maintain its status as separate property, it is not necessary that it should be preserved in specie or in kind; yet, when it has undergone mutations and assumed other conditions, it is absolutely necessary, in order to maintain its character as separate property, that it be clearly traced and located. Chapman v. Allen, 15 Tex. [278], 283; Rose v. Houston, 11 Tex. [324], 326 [62 Am.Dec. 478]; Schmeltz v. Garey, 49 Tex. [49], 60. The money expended in the purchase of the realty involved here should have been traced back to the separate estate of Julia A. Dimmick, not by way of surmises and probabilities, but by plain and connected channels." Dimmick v. Dimmick, 95 Cal. 323, 30 P. 547, 548.

Here, the title was taken in the name of the husband after his marriage, and was presumptively community property. It remained so until his death. An insignificant amount was paid as a cash consideration for this land and a much larger amount remained as an indebtedness against it. Was this the commingled funds of the community and Calliham's separate estate? We think, if such funds had been so commingled as that the separate estate had lost

its identity, the property purchased with same would have become in law community property of the husband and wife. Did Calliham purchase at this time any personal property, such as cattle, horses, agricultural implements, etc.? We look in vain for an answer to these questions in the facts before us. It may be that a case could be proven even circumstantially, of such cogency as to clearly support the inference that separate funds only went into the purchase of real estate. Such is not the case before us.

Plaintiffs vigorously contend that this case is not a suit within the terms of article 3716, and therefore the heirs could testify as to transactions with the deceased. They say the exact point has never been decided. Both parties here have apparently overlooked the case of Wideman v. Coleman et al. (Tex.Com.App.) 17 S.W.(2d) 786, by Judge Critz. This last case in its controlling essentials is identical with the present one. The heirs of a deceased husband sued the devisee of his deceased wife. One of these heirs offered to testify to certain facts tending to show the property was not community, just as in this case. Judge Critz' language is as follows:

" 'It was in testimony by appellant, Mrs. Mary R. Coleman, that she attended to the books of her father and had charge of his banking books; that after her father received the money from Virginia he had two accounts in different banks, one in the name of the L. W. Savage Grocery Company, which he used in connection with the grocery business, and the other in the name of L. W. Savage, which was originally in the sum of $2,089.14; that she saw the deposit slip issued to her father for this amount, and took charge of same; that she knew when the money from Virginia was received, and this account was opened at that time; that, when the land in question was bought, she saw the canceled check for $750, signed by her father, and it had been drawn against this account.' * * *

"We are of the opinion that the Court of Civil Appeals was in error in holding the witness Mary E. Coleman competent as a witness to testify to the above facts, under the record before us. Under article 3716, Rev.Civ.St. of Texas 1925, a witness is incompetent to testify to matters or facts that come within the statute. This statute does not disqualify a witness from testifying to facts such witness may know of his own knowledge. Harris v. Seinsheimer, 67 Tex.

356, 3 S.W. 307. However, if the witness' knowledge of such facts is a part of the transaction with, or statement by, the deceased, he is incompetent to testify thereto. Holland v. Nimitz, 111 Tex. 419, 232 S.W. 298, 239 S.W. 185. This rule applies, 'not merely as to statements by deceased to him, or transactions between him and the deceased, but also as to such statements to or transactions between deceased and third persons, and that, too, although occurring when the witness had no interest therein.' Parks v. Caudle, 58 Tex. 216. An examination of the bill shows that Mrs. Coleman acquired all of the above facts testified to by reason and as the direct result and part of transactions between her and her deceased father. The knowledge of the facts is so inseparably connected with the transactions between the witness and her father as to make her knowledge so gained a part of the transactions themselves. Under such a record, to permit her to testify thereto would, in our opinion, violate the letter and spirit of the statute.

"Of course, Mrs. Coleman may testify as to any fact that she may know of her own knowledge, provided such knowledge is not a part of a statement by or a transaction with the father. The rule prohibiting the testimony applies with equal force to statements by the father to third persons, and to transactions between the father and third persons, as it does to statements by the father to the witness or transactions between the father and the witness. There is some testimony in the record which, from the bill before us, we are unable to say positively whether it violates the above rule." Wideman v. Coleman (Tex.Com.App.) 17 S.W. (2d) 786, at pages 788, 789.

■ Here, plaintiff offered to prove certain entries in a book kept by her husband of transactions between him and deceased S. W. Calliham. The materiality of this does not appear from the face of the bill. We presume the entries tended to show the purchase of the land in question with the separate funds of S. W. Callihan, and that a proper predicate was laid for their introduction, though neither appears on the face of bill of exception No. 5, presenting this matter. Even so, the entries were inadmissible, being transactions with the deceased within the meaning of article 3716. That the husband of an heir could not testify to such has been pointedly and repeatedly decided. Leahy v. Timon, 110 Tex. 73, 215 S.W. 951; 14 Tex.Jur. 325, and authorities there col-

lated. The Wideman Case, supra, plainly holds the heir cannot so testify.

 By an insufficiently presented proposition, plaintiffs claim the action of the court was error in refusing to permit one of the plaintiffs, Mrs. Finley, to answer several questions of which the following is typical:

"Q. Do you know of your own knowledge what S. W. Calliham did with any money that he received from the estate of his said mother? Please state how you know what he did with said money. A. S. W. Calliham invested $1050.00 that he inherited from the sale of land in a section of land in Armstrong County, Texas, known as Section No. 128. I know this from personal association with S. W. Calliham and Andrew Calliham."

This was hearsay of the rankest kind. Witness apparently was exercising her feminine privilege of testifying as a fact to a matter that occurred in her absence, hundreds of miles away, upon what had been told her. In addition, she got her information partly at least from personal association with the deceased, and such testimony in our opinion is inhibited by the terms of article 3716 as held in the quoted authority, supra.

Plaintiffs, after offering to prove by T. D. Brown that he bought 32 acres of land from S. W. Calliham for $600 cash and $600 in notes, offered further to prove the following:

"Q. Did you ever have a conversation with S. W. Calliham as to what he did with the money that he received from the land that you purchased from him? If you have stated that you did purchase some from him, what did he tell you that he did with such money? A. Yes, he, the said S. W. Calliham, told me that he purchased a section of land in the West for the money I paid him for the 32 acres and had some money left."

The court should have admitted the evidence of the purchase of this land as detailed above, but correctly excluded the quoted answer. We have, however, assumed above proof was properly made of the first of the above as stated hereafter.

The Supreme Court of California in passing upon this very question holds:

"Deceased, by declarations made in her lifetime, could not create evidence to be used against her husband for the purpose of changing the character of the community property into the separate property of the wife." Bollinger v Wright, 143 Cal. 292, 76 P. 1108, 1110.

Both the husband and wife were then in actual or constructive possession of the land, owning same on the face of the record jointly. We know of no rule of law that permits one after purchase to "admit" his co-owner and possessor out of all right and title.

We do not notice or pass on the indefinite character of said evidence.

We have not attempted to discuss every question of evidence raised.

These fall into the following classes:

1. Hearsay, or conclusions of so obvious a nature as to require no discussion.

2. Excluded evidence not shown in the brief to have been excepted to and not set out, or evidence offered as a whole along with plainly inadmissible evidence.

3. Evidence inhibited by article 3716, the nature of which we have already shown.

We have, however, considered all admissible evidence, whether excluded or not, in passing upon the action of the court in directing a verdict. Such action in our opinion was proper.

The judgment is affirmed.