### TAYLOR v. SULOCH OIL CO. et al.
### No. 5143.

Court of Civil Appeals of Texas. Amarillo.
April 8, 1940.

Rehearing Denied May 27, 1940.

Further Rehearing Denied June 24, 1940.

Tom L. Beauchamp, Jr., and Wheeler & Wheeler, all of Austin, for plaintiff in error.

W. S. Birge, of Amarillo, for defendants in error J. L. Sullivan, G. E. Sullivan, Betty K. Sullivan Garnett, and Bevery C. Garnett.

Underwood, Johnson, Dooley & Wilson, of Amarillo, for defendant in error Suloch Oil Co.

STOKES, Justice.

This is a garnishment proceeding instituted by plaintiff in error against defendant in error, Suloch Oil Company, a corporation, in which plaintiff in error seeks to subject certain capital stock of the corporation which he alleges belongs to J. L. Sullivan to the payment of a judgment theretofore procured by him against Sullivan in the district court of Tarrant County. The garnishment proceeding was instituted in a district court of Tarrant County but afterwards transferred to the district court of the 108th judicial district of Potter County where it was tried

on the 14th of November, 1938. A jury was empaneled to try the case but at the close of the testimony the parties agreed that the jury might be discharged and the issues decided by the trial judge who, on the 5th of January, 1939, rendered judgment in favor of the garnishee, denying plaintiff in error any relief. Plaintiff in error duly excepted to the judgment, gave notice of appeal, and has brought the case to this court by means of a writ of error.

The record reveals that the Suloch Oil Company was organized as a Texas corporation in April, 1930, with a capital stock of $10,000, divided into one thousand shares of $10 each. At the time of the organization the capital stock was subscribed by W. S. Birge, J. L. Sullivan and G. E. Sullivan, the latter being the wife of J. L. Sullivan, but during the year 1930 the original stock was surrendered and the capital stock reissued, Mrs. Sullivan taking 490 shares, J. L. Sullivan 10 shares, and Chuck Ochiltree taking 500 shares. On October 28, 1933, Sullivan and his wife gave to their daughter, Betty K. Sullivan, the 10 shares held by J. L. Sullivan and a new certificate was issued to the daughter, although it was not delivered to her but held by the company pending the return and cancellation of the former certificate. Plaintiff in error contends that the capital stock held by Mrs. Sullivan was community property, therefore, subject to the writ of garnishment, and that the 10 shares held by the daughter was also subject to the writ because, he alleges, that at the time it was given to her, J. L. Sullivan was insolvent and did not have property remaining in his hands sufficient to pay his outstanding obligations. He alleges that the gift was, therefore, void and that the entire 500 shares of the capital stock held by the Sullivans being subject to the writ of garnishment, the court erred in rendering judgment against him thereon.

The controlling issue in the case is presented by the first proposition of law asserted by plaintiff in error to the effect that the uncontradicted evidence shows that Mrs. Sullivan acquired the capital stock during the coverture of herself and J. L. Sullivan, and the presumption arises that it was community property and subject to the writ of garnishment. He contends

in this connection that there was no evidence in the case of sufficient probative force to rebut this presumption.

The testimony shows that, prior to her marriage, Mrs. Sullivan lived at Vancouver, British Columbia, where she and J. L. Sullivan were married in the year 1907. At the time of her marriage she was possessed of a little less than $10,000 in money and also owned some cattle and horses. At the time of her marriage her father gave her $5,000 in money and in 1912 her father died and from his estate she procured $5,000 more. There is no question raised as to this property belonging to Mrs. Sullivan in her separate right at that time. After their marriage J. L. Sullivan and his wife removed to Texas where they engaged in the oil business on a rather extensive scale, organizing some twelve or fifteen different corporations, among them being the garnishee in this case. The statement of facts is voluminous and contains a large amount of testimony concerning the organization of these corporations and the ownership of the capital stock in each of them but, as the writ of garnishment sought to reach only the capital stock owned by the Sullivans in the Suloch Oil Company, we are not concerned with any of the investments and operations other than those pertaining to the garnishee company. J. L. Sullivan testified, and his testimony is undisputed, that Mrs. Sullivan paid for all of the capital stock in the garnisheed company which was issued to the Sullivans by assigning to the company an oil and gas lease known as the Bost lease. He said that early in the year 1930 Mrs. Sullivan had on deposit in the East End Branch Bank of the Royal Bank of Canada at Vancouver, British Columbia, approximately $75,000; that the Bost lease was purchased and paid for by her out of the $75,000 which she had in the Vancouver bank. He said that she personally issued a draft upon the account and with the proceeds of the draft she paid for the Bost lease. As to the source from which Mrs. Sullivan accumulated the money in this deposit, he said that it consisted of money which she had when she married and money given her by her father at the time they were married, and money which she procured from her father's estate after his death and from the sale of horses and cattle and "trading around and income she added." The testi-

mony does not reveal how much money she received for the horses and cattle but it is undisputed that the money was in the bank in Canada to her credit and all of it that is specifically accounted for came from a source which unquestionably made it her separate property.

Art. 4622, R.C.S.1925, provides that "Funds on deposit in any bank or banking institution, whether in the name of the husband or wife, shall be presumed to be the separate property of the party in' whose name they stand, regardless of who made the deposit, and unless said bank or banking institution is notified to the contrary, it shall be governed accordingly in honoring checks and orders against such account."

It is held 'by our courts that this statute was enacted primarily for the guidance of banks in receiving and disbursing deposits but that the presumption obtains and applies generally to creditors and not merely to controversies between husbands, wives and banks. Emerson-Brantingham Implement Co. v. Brothers, Tex.Civ.App., 194 S.W. 608; Graham Nat. Bank v. First Nat. Bank, Tex.Civ.App., 48 S.W.2d 358; Lloyd v. Lloyd, Tex.Civ.App., 107 S.W.2d 1047; First Nat. Bank v. Wagner Supply Co., Tex.Civ.App., 9 S.W.2d 474; Guaranty State Bank v. Shirey, Tex.Civ. App., 258 S.W. 1109; Tatum State Bank v. Gibson, Tex.Civ.App., 24 S.W.2d 506; Commercial State Bank v. Van Dorn, Tex. Civ.App., 25 S.W.2d 192. These authorities hold, however, that the presumption declared by the statute is not conclusive, but is a rebuttable one. It was not intended to supplant nor to destroy the statutory provision of our law created by Art. 4619, R.C.S.1925, Vernon's Ann.Civ.St. art. 4619, which provides that all property acquired by either the husband or wife during marriage shall be deemed the common property of the husband and wife. It is a well established rule in this state that where the husband or wife permits his or her separate property to become so commingled with community property that it cannot be identified, the separate property so commingled becomes community property and is subject to the debts of the community. Mitchell v. Mitchell, 80 Tex. 101, 15 S.W. 705; Evans v. Purinton, 12 Tex.Civ.App. 158, 34 S.W. 350; Hamilton-Brown Shoe Co. v. Lastinger, Tex.Civ. App., 26 S.W. 924; Ralls v. Ralls et al., Tex.Civ.App., 256 S.W. 688.

Mr. Sullivan testified that the fund increased from approximately $20,000 to $75,000 after he and Mrs. Sullivan were married. According to his testimony, some of this increase must have been the result of Mrs. Sullivan's trading and income which she added after her marriage. At that time she owned some horses and cattle but she sold these and the conclusion is inescapable that her "trading around and income she added" was by the· use, investment, sale and reinvestment of the $20,000 which she had in the Vancouver bank and the proceeds of the sale of her horses and cattle. By trading and adding income she accumulated approximately $55,000 during the years following her marriage. This money was acquired by her during her marriage with J. L. Sullivan and by the positive declaration of the statute, Art. 4619, R.C.S., 1925, was community property. It was commingled with her separate funds in the Vancouver bank and no effort was made 'by defendants in error to identify it or in any way segregate it from the community accumulation. The presumption created by Art. 4622, R.C.S., was thereby overcome by plaintiff in error and the burden then shifted to defendants in error either to show that the entire increase in the deposit at Vancouver was composed of such funds as are exempt from execution against the husband, or to segregate that portion of it which belonged to Mrs. Sullivan in her own right and show that the segregated fund paid for the Bost lease, the assignment of which to the Suloch Oil Company was the consideration for the capital stock impounded under the garnishment. This they did not do and, in our opinion, the court below was in error in rendering judgment in their favor.

There are a number of other assignments of error and propositions of law presented by plaintiffs in error, but the case as made by the record now before us must stand or fall upon the principles we have discussed and we do not deem it necessary, therefore, to discuss the remaining assignments of error.

The judgment of the court below will be reversed and the cause remanded.

### On Motion for Rehearing.

All parties to this appeal have filed motions for rehearing, defendants in error contending that we erred in not affirming the judgment of the lower court and plain-

tiff in error contending that we erred in not rendering judgment in his favor.

■ The principal contention of defendants in error is that they were entitled to judgment as entered by the trial court and that its judgment should be affirmed because the evidence showed that J. L. Sullivan made a gift to his wife, G. E. Sullivan, of his interest in whatever portion of the fund that was on deposit in the Vancouver bank to her credit which constituted community property. The substance of J. L. Sullivan's testimony in respect to this phase of the matter was that, in 1907, when he and Mrs. Sullivan were married, they made an agreement to the effect that he would not claim any right or title or interest in her separate estate and that any property that should stand in the name of Mrs. Sullivan would be her separate property and estate. He said the agreement had continued unbrokenly since it was made. This is nothing more than an agreement made, in advance, between a husband and his wife to change the status of community property yet to be acquired. The law is well settled in this state that such an agreement is without force and is null and void. The Supreme Court, speaking through Justice Critz, in the case of Brokaw v. Collett, Tex.Com.App., 1 S.W. 2d 1090, 1091, announced the rule with much force and clarity in the following language: "It does not lie in the power of the husband and wife by contract between themselves, made in advance, to set aside the Constitution of this state, as applied to the wife's separate property rights." See, also, Frame v. Frame, 120 Tex. 61, 36 S.W.2d 152, 73 A.L.R. 1512.

The motion of defendants in error will be overruled.

We remanded the case to the trial court for another trial upon the theory that it probably had not been fully developed. We were inclined to the thought that the defendants in error were entitled to further opportunity to trace the fund which went into the purchase of the Bost lease, the assignment of which to the Suloch Oil Company paid for the capital stock owned by the Sullivans; segregate, if possible, the separate and community elements of it and show, if they could, that Mrs. Sullivan's separate portion constituted the investment involved. Further consideration of that phase of the matter has convinced us, however, that our conclusion in this respect was not correct. In the first place, defendants in error were not deprived of the right nor the opportunity to make such tracing by any adverse ruling of the trial court. Secondly, J. L. Sullivan testified that such tracing could not be made. In connection with his testimony concerning the money Mrs. Sullivan had when they married and that which she thereafter procured from her father's estate, he said: "I am not trying to trace for you any particular money that went any place, because, when you lease water that comes from different springs, I don't know which particular water comes from which particular spring."

In answer to questions of counsel, he further said that such a tracing could not be done any more in Mrs. Sullivan's case than it could in water that comes from different springs.

■ In view of this and other testimony in the record, we are forced to the conclusion that the case was fully developed upon the trial and that another trial would serve no useful purpose.

■ We are not convinced, however, that plaintiff in error is, under the record, entitled to a judgment for the ten shares of the capital stock that were given by the Sullivans to their daughter, Betty K. Sullivan, now Betty K. Sullivan Garnett. The motion of plaintiff in error will be granted and judgment here rendered in his favor in so far as the 490 shares of capital stock standing in the name of Mrs. Sullivan are concerned; but the judgment of the court below will be affirmed in so far as the ten shares held by Betty K. Sullivan Garnett are concerned.

Affirmed in part and in part reversed and rendered.