ESTATE OF E. T. NOBLE, DECEASED, CORAL L. NOBLE, AS EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CORAL L. NOBLE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 102691, 102692.    Promulgated December 18, 1942.

*Kenneth H. Lott, Esq.*, for the petitioners.
*Stanley B. Anderson, Esq.*, for the respondent.

OPINION.

SMITH, *Judge:* It is the contention of the petitioner herein that one-half of the net income from certain oil leases in the State of Texas for the calendar years 1936 and 1937 constituted taxable income of the decedent and one-half taxable income of Coral L. Noble, the petitioner, and that the decedent erred in reporting in his returns for 1936 and 1937 the entire net income received from those leases. It has been stipulated that if the decedent was taxable upon the entire net income from the leases the amount of the deficiencies determined against E. T. Noble for the taxable years is correct and that the deficiencies determined against Coral L. Noble shall be expunged.

During the taxable years here in question E. T. Noble and Coral L. Noble, husband and wife, were domiciled in the State of Oklahoma, a noncommunity property state. Under the laws of that state the earnings of the husband and all of the income received from his separate property belonged to and was taxable to him. His wife had no vested interest in any part of his income.

Had the leases in question been on land located in the State of Oklahoma we think that without question E. T. Noble would have been taxable upon the entire income from the leases. The question is whether a different rule obtains in view of the fact that the leases in this case were upon land in the State of Texas.

In *Hammonds* v. *Commissioner*, 106 Fed. (2d) 420, the husband and wife were also domiciled in the State of Oklahoma. In exchange for personal services rendered in the State of Texas and elsewhere during coverture the wife acquired an undivided one-half interest in certain oil and gas leases situated in Texas. She gave no consideration therefor other than her personal services. She, together with her husband and their co-owner, sold and assigned certain of the leases in 1931 for an agreed cash consideration of $189,800 and a further consideration of $451,850 to be paid out of the assignee's share of the oil from the leases, as and when produced. Of the cash consideration $139,800 was paid in 1931. The balance of the cash consideration remained unpaid, due to the fact that certain checks given therefor were dishonored. An agreement was entered into whereby the unpaid balance of the cash consideration was to be paid in future installments. From the sale of the leases the wife and her husband received of the cash consideration $69,900 in 1931 and $17,392.50 in 1932. They also received from payments out of the oil produced $25,555.51 in 1932.

The question before the court was whether the wife was taxable upon the entire amount of the income received in 1931 and 1932 or upon only one-half of that amount. The court held that, since the leases were acquired by the wife "solely from the toil, talent, or

other productive faculty of the spouses and from the earnings of community property itself" she was taxable upon only one-half of the income received and her husband was taxable on the other half.

It is urged that a like holding must be made in these proceedings; for it is contended that the leases were acquired in part through services performed by E. T. Noble. We do not think, however, that the evidence warrants a finding to that effect. E. T. Noble paid the same amount for his interest in the Muckelroy lease and all subsequent leases acquired in the State of Texas as did his law partner, Cochran. The evidence is to the effect that Cochran loaned Noble money to enable him to acquire the same interest that he himself acquired. The evidence does show that Noble made a few trips to Texas in connection with the leases, but Cochran testified that he did not make as many trips as he himself made. Since it appears that Noble paid the same amount for his interest in the Texas leases as Cochran did, we do not think that there is any ground for contending that a part of the consideration paid by Noble was personal services rendered.

The petitioner contends that a different situation obtains where an interest in a Texas lease is purchased with borrowed money from one where the purchase is for cash. We can not see, however, that a purchase on credit stands on a different footing from a purchase for cash. We do not think that it was the intention of the Circuit Court of Appeals in the *Hammonds* case, *supra*, to extend the community property law of Texas so as to cover all income from real property located in that state by spouses domiciled in a non-community property state. In fact the court said in its opinion:

> The general rule in the community property states that marital rights in lands, regardless of the residence of the husband and wife, are regulated by the law of the situs is subject to the qualification that where property is acquired in a community property state, through purchase by funds which are the separate property of one of the spouses, or in exchange for separate property of one of the spouses, the character of the funds or of the property given in exchange is transmitted to the property acquired. Separate property remains separate through all its mutations and changes so long as it can be clearly and indisputably traced and identified.

In *Joiner* v. *Joiner*, 112 S. W. (2d) 1049, the Supreme Court of the State of Texas held that under the laws of Oklahoma there were two recognized classes of property owned by husband and wife—(1) that which was jointly acquired, and (2) that which was separately acquired. In discussing "separately acquired" property the court said:

> * * * The statutes of that state [Oklahoma] do not specifically define separate property, but the decisions, in light of the definitions of "jointly acquired" property, have by necessary implication defined separate property as property

acquired by either spouse as result of his or her separate earnings, skill, industry, or labor. * * *

The court then held that property in Texas, including real estate situated there, had been acquired during coverture by the separate industry and efforts of the husband, C. M. Joiner, and had been acquired while the parties were domiciled in Oklahoma, and under the laws of Oklahoma the property was the separate property of the husband and retained the same character in Texas.

In *Commissioner* v. *Skaggs* (C. C. A., 5th Cir.), 122 Fed. (2d) 721, it was held that Skaggs, then domiciled in Texas but owning separate real estate in California from which he received rentals, was not entitled to report that income as community income. It was held that, since under the laws of the State of California income from separately owned property is taxable to the owner and not to the marital community, the law of the state in which the real property was located must control, and that, even though the rentals from separately owned real estate in the State of Texas constitute community income, a different rule must obtain where the real estate is located in the State of California. The Supreme Court denied certiorari, 315 U. S. 811. We do not think that the decision of the court in that case has a material bearing upon the issue presented here.

In general the community property laws of a state can not be given extraterritorial effect. See *Blumenthal* v. *Commissioner* (C. C. A., 2d Cir.), 60 Fed. (2d) 715; certiorari denied, 287 U. S. 662. Cf. *Herbert Marshall*, 41 B. T. A. 1064; *Nathaniel Shilkret*, 46 B. T. A. 1163. This does not mean, of course, that where spouses domiciled in a community property state move to a noncommunity property state the courts of the noncommunity property state will not give the same status to the property acquired in the community property state as is given to that property in that state. See *Johnson* v. *Commisioner* (C. C. A., 8th Cir.), 88 Fed. (2d) 952.

We approve the respondent's determination of deficiencies in Docket No. 102691.

The petitioner claims that the deficiencies in tax determined by the respondent to be due from the estate of E. T. Noble have already been paid. This contention is not material in a redetermination of the amount of the deficiencies in these proceedings.

*Decision will be entered for the respondent in Docket No. 102691, and decision of no deficiencies will be entered in Docket No. 102692.*