W. D. JOHNSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 106725. Promulgated May 4, 1943.

*John H. McEvers, Esq., Reece A. Gardner, Esq.,* and *John M. Phillips, Esq.,* for the petitioner.
*Angus R. Shannon, Jr., Esq.,* for the respondent.

OPINION.

HILL, *Judge: Issue 1.*—The first issue for our decision is whether the doctrine of *res judicata* concludes the petitioner from litigating the question here involved because of an adjudication in a prior proceeding. The respondent has affirmatively pleaded *res judicata* and at the hearing moved for judgment on that ground. We reserved our ruling upon his motion at that time. Respondent also objected to the introduction of any evidence upon the ground that petitioner was "precluded from proceeding by the doctrine of *res judicata*." We also reserved our ruling on that objection.

1050

The issue in the instant case is what part of the income for the taxable year here involved is allocable to the petitioner's wife.

Where the causes of action are different a prior judgment is not a bar unless it determined some fact essential to the maintenance of the second action. The estoppel does not extend to matters which might have been but were not litigated. It extends only to those matters or issues which were expressly or by necessary implication adjudicated in the first action. See 2 Freeman on Judgments, 1429. Each tax year gives rise to a new cause of action. Only when the question or right in issue is precisely the same can the prior judgment be *res judicata*. *Tait* v. *Western Maryland Railway Co.*, 289 U. S. 620. In applying the doctrine to such subsequent suit on a different cause of action "inquiry must always be as to the point or question actually litigated and determined in the original action." *Cromwell* v. *County of Sac*, 94 U. S. 351. "Any right, fact or matter in issue and directly adjudicated upon, or necessarily involved in, the determination of an action * * * in which a judgment or decree is rendered upon the merits is conclusively settled * * * and can not again be litigated between the parties." 34 C. J. 743. With these rules before us we look to the prior proceedings to determine what were the issues and matters directly or by necessary implication determined therein.

The prior proceeding involved the taxability of the income of petitioner and his wife from all sources, both within and without community property states. The issue as first presented to the Board in that proceeding was that one-half of all the income was taxable to petitioner's wife. The Board found that more than one-half of such income belonged to petitioner and held him taxable on the whole of the income. The Circuit Court determined that some part or percentage of the income belonged to petitioner's wife, but upon the evidence presented it was held impossible to determine what that part was. The Circuit Court reversed the Board's decision and remanded the case for further hearing by the Board to ascertain and determine what such part or percentage was and to enter its decision accordingly. The evidence presented at the further hearing was held insufficient to show what part or percentage of the income belonged to petitioner and to his wife, respectively, and because of such failure of proof the Board determined that the whole of the income was taxable to petitioner. The Circuit Court affirmed that decision.

Petitioner concedes that the former decision would foreclose him from contending here that he is not taxable on the whole of the income which he received from sources outside the community property states. Such income is not here involved. The income here involved is that derived from property within the States of Texas and New Mexico. Petitioner contends that all of such income is community income of himself and wife and that he is taxable on only one-half thereof. For

this position petitioner relies on the community property laws of Texas and New Mexico.

The former proceeding involved income from property, business operations, and salaries outside the community property States of Texas and New Mexico, as well as income from lands and tangible personal property within those states. The instant proceeding involves only income from the latter source. The Texas and New Mexico lands involved in this proceeding are the same lands in those states which were involved in the former proceeding and the ownership thereof has remained unchanged. The Board and the Circuit Court did not, in the former proceeding determine that no part of the income there involved belonged to petitioner's wife. On the other hand, the Circuit Court recognized that some part, less than one-half, of such income belonged to the wife but held that the evidence did not enable it or the Board to determine what that part was. The character of ownership of the income-producing property or of the income involved in the present proceeding was not determined or adjudicated in the former proceeding. The Circuit Court merely held in that proceeding that petitioner had failed to prove what proportion or percentage, if any, of the purchase price of the lands and income-producing personal property there involved was allocable to the community or joint funds of petitioner and his wife and for that reason held that all of the income therefrom was taxable to petitioner. In the former proceeding the question was not presented to it and the court did not consider or decide whether income from lands and tangible personal property situate in Texas or New Mexico, even if separately owned by petitioner, was community property. Therefore, since this is a different cause of action, the prior judgment is not conclusive. See Restatements of Judgments, Tentative Draft No. 1, p. 8. Moreover, nothing was actually decided in the prior proceeding except that petitioner was unable to support the burden of proving just what part of his income was taxable to his wife. The burden of proof in the former proceeding as determined by the Circuit Court on the issues there presented was to trace community property funds into the property and investments which produced the income in the taxable years and to establish thereby the part or percentage of such income which should be allocated to that part of the income-producing property owned jointly or in community. In that proceeding the petitioner was unable to so trace the community funds but contended that there was an inseparable commingling of community property with separately owned property and that the legal effect thereof was to make the whole of the commingled property and the income therefrom either the community or joint property of himself and wife. The court disapproved that contention and, for failure of the proof to establish the part or percentage of the income

allocable to jointly owned or community property, held the entire income taxable to petitioner. Thus, even though it were assumed that petitioner's income in the present taxable year arose from substantially the same property as he held in the taxable years of the former proceeding, the portion of that property and of the income therefrom which belonged to him or to his wife has not been adjudicated. The Commissioner's determination was sustained merely because petitioner failed to sustain his burden of proof. The issue raised in the instant case was never decided. *Thomas Cusack Co.*, 17 B. T. A. 1105. Cf. *Cromwell* v. *County of Sac, supra.*

Therefore, we overrule respondent's motion and objections on all points in so far as the issue of *res judicata* is concerned. We hold that *res judicata* does not apply to the facts here.

*Issue 2.*—The second issue is what part, if any, of the income here involved was owned by and taxable to petitioner's wife. That issue involves a consideration of the following questions:

(1) Does the evidence establish that all or any of the lands in Texas and New Mexico were acquired with the community or joint funds or assets of petitioner and his wife by reason whereof they held such lands in community or joint ownership and that accordingly each owned one-half of the rents, oil royalties, and proceeds from the sale of fruit produced therefrom in the taxable year?

(2) Regardless of whether the evidence shows that all or any of the lands in Texas were so acquired, were petitioner and his wife each entitled to one-half the rents, issues, and profits, exclusive of oil royalties, from such lands?

(3) Was the income derived from the sale of the Texas cattle the community property of petitioner and his wife?

(4) Did the partnership agreement of January 1, 1937, between petitioner, Mrs. Johnson, and Clayton constitute her a one-fourth interest partner in the Clayton and Johnson partnership and consequently the owner of one-fourth of the earnings and profits thereof?

The petitioner contends that Mrs. Johnson owned a one-half interest in all lands in Texas and New Mexico, both being community property states. His argument as to these lands is premised upon the statutes of Texas and New Mexico. Article 4619 of Vernon's Civil Statutes of the State of Texas provides as follows:

*Community Property.* All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved. During coverture the common property of the husband and wife may be disposed of by the husband only; * * *

Section 68–3–4 of the New Mexico Statutes Annotated is substantially similar to the Texas statute above.

Petitioner constructs his argument in the following manner: All of the property which petitioner and his wife had when they relinquished their Texas domicile (the question of whether this was in 1899 when they left Texas or in 1902 when they established a permanent domicile in Missouri we find unnecessary to determine and expressly refrain from doing so) was community property; and the character of the fund was not changed by the establishment of domicile outside of Texas, since all funds, even though some were the separate funds of petitioner, were commingled with the community property after the establishment of the Missouri domicile. This, petitioner contends, changed the character of the whole fund to community property. Thus, he contends lands purchased with this fund in community property states of Texas and New Mexico become community property.

The principal contention of the respondent is that the prior case established the "law of the case." The doctrine of the "law of the case" applies only to the same proceeding.

Petitioner admits that he can not trace the property which he and his wife owned when they left Texas into the property held during the taxable year. He attempts to avoid the necessity of such tracing by relying upon what he contends are the laws of Texas and New Mexico.

Under Texas law when separate and community funds are so commingled that they can not be traced, the whole fund is held to be community property. *Taylor* v. *Suloch Oil Co.* (Tex. Civ. App.), 141 S. W. (2d) 657; *Ervin* v. *Ervin* (Tex. Civ. App.), 128 S. W. 1139. Petitioner also contends that under Texas law any lands purchased in Texas during marriage are presumed to be community property. This presumption is recognized and applied by the Texas courts. *Foster* v. *Hackworth* (Tex. Civ. App.), 164 S. W. (2d) 796; *Finley* v. *Pafford* (Tex. Civ. App.), 104 S. W. (2d) 163. "Where the separate property of one of the spouses furnishes only a part of the consideration for property acquired in an exchange in the name of such spouse, the property thus acquired belongs to the separate estate of that spouse in the proportion that his or her separate property entered into the consideration therefor." 64 A. L. R. 249, approved in *Gillespie* v. *Gillespie* (Tex. Civ. App.), 110 S. W. (2d) 89. The fact of whether property is separate or community is fixed at the time of acquisition. *Kuykendall* v. *Gill* (Tex. Civ. App.), 131 S. W. (2d) 249. A statement in the deed that the conveyance is to one of the spouses rebuts the presumption of community. *McCutchen* v. *Purinton*, 84 Tex. 603; 19 S. W. 710.

The presumption of community ownership is a matter of evidentiary procedure rather than a substantive property right, except where the property is derived solely from the toil, talent, or other productive faculty of the spouses and from the earnings of community property itself. See *Hammonds* v. *Commissioner*, 106 Fed. (2d) 420, in which

it is held that property within a community property state "derived solely from the toil, talent or other productive faculty of the spouses and from the earnings of community property itself" is community property even though the marital domicile of the spouses is in a non-community property state under the laws of which their earnings are separate property. However, the *Hammonds* case recognized that "the general rule in the community property states that marital rights in lands, regardless of the residence of the husband and wife, are regulated by the law of the situs is subject to the qualification that where property is acquired in a community property state, through purchase by funds which are the separate property of one of the spouses, or in exchange for separate property of one of the spouses, the character of the funds or of the property given in exchange is transmitted to the property acquired." Numerous Texas cases are cited as supporting the above quoted statement from the *Hammonds* case. In that case, also the court stated that: "Separate property remains separate property through all its mutations and changes so long as it can be clearly and indisputably traced and identified."

Hence, we say that the presumption of community ownership within the applicable terms of article 4619 of Vernon's Civil Statutes of Texas, and sections 68–3–4 of the New Mexico Statutes Annotated, is evidentiary rather than substantive, except where the property involved is derived solely from the toil, talent, or other productive faculty of the spouses, or from the earnings of community property itself. It is our opinion that the statutory presumption of community ownership is not sufficient alone to support the burden cast upon petitioner to overcome the presumption of correctness of respondent's determination of deficiency herein.

Petitioner's contention that the laws of Texas and New Mexico are effective to constitute the commingled funds with which it is claimed the income-producing assets were acquired the community property of petitioner and his wife is not persuasive. The character of the fund in question was determined by the law of Missouri and not by the laws of Texas and New Mexico. Even though part of the fund may have had its inception in community property of petitioner and his wife in Texas, we fail to perceive how the law of Texas can reach beyond its territorial jurisdiction to the fund after its many untraceable commingling mutations over a number of years in the noncommunity property State of Missouri, the domicile of the spouses, and because of such commingling stamp the whole funds with the character of community ownership. It is obvious that the elemental constituents of the fund had long since lost their identity prior to its use in acquiring the Texas and New Mexico lands. Whatever the character of the ownership of the fund as between petitioner and his wife, it was not a community ownership. Therefore, it must have

been owned either by one of them alone or by both of them jointly, as separate property, for there is no community ownership under the law of Missouri. The fund with which the lands were purchased not being community property, the lands purchased did not become the community property of petitioner and his wife. Nor does the fact that commingled funds, representing separately owned as opposed to community owned interests of spouses domiciled in a noncommunity property state, are invested in lands in a community property state, give to such funds or the property purchased the character of community ownership.

In the prior proceeding it was held necessary for petitioner to trace the funds with which the income-producing properties were purchased back to their original source in order to determine whether and what percentage, if any, such funds originated in community property as a basis for determining what part or percentage, if any, of the income-producing assets purchased with such funds belonged to petitioner's wife. Petitioner was unable to do that in the prior proceeding and concedes a like inability here except as to the Slash ranch.

At the time the petitioner and his family left Texas a 73/140 interest in the Johnson Bros. ranch was owned by the community. This interest was sold and a note was received as partial payment. The note received in partial payment was exchanged directly for the Slash ranch. Therefore, since petitioner has directly traced a community asset into the Slash ranch as the sole consideration therefor, the income therefrom is taxable to petitioner and his wife in aliquot parts. This is the only asset involved in this proceeding into which petitioner has traced community assets.

Under Texas law oil royalties are stamped with the same character of ownership as that of the land producing the oil. *Dolores Crabb*, 47 B. T. A. 916. Since we have held that only the Slash ranch is shown by the evidence to be community property and that there is no proof of the extent of the interest, if any, of the wife in the other lands involved, we hold that all oil royalties, except those derived from the Slash ranch, must be reported in petitioner's gross income. *Estate of E. T. Noble*, 1 T. C. 310.

However, as to the rents, issues, and profits received from the lands located in Texas, our holding must be that petitioner is entitled to report such income on the community basis. Even if the lands should be held to be the separate property of petitioner, all income therefrom during coverture falls into the community under the law of Texas. *Logan* v. *Logan* (Tex. Civ. App.), 112 S. W. (2d) 515; *Willcut* v. *Willcut* (Tex. Civ. App.), 278 S. W. 236. The law of situs of land controls as to the determination of whether or not the income from such land is separate or community income. *Commissioner* v. *Skaggs*, 122

Fed. (2d) 721. Cf. *Hammonds* v. *Commissioner*, 106 Fed. (2d) 420.

Petitioner concedes that rents, issues, and profits from separate lands in New Mexico do not fall into the community. All income from lands in New Mexico must be reported in the separate return of petitioner.

The next question is whether or not petitioner is entitled to report the income derived from the sale of cattle upon the community basis. The increase of cattle falls into the community under Texas law. Even if the original cattle placed on the Texas ranches in question were the separate property of petitioner, the law of Texas would apply to make the increase thereof community property. *Watkins Co.* v. *Gibbs* (Tex. Civ. App.), 66 S. W. (2d) 355.

The record does not disclose the original source or character of ownership of the funds with which cattle were acquired to stock the various Texas ranches in question. The operation of the cattle business on the several ranches, including the partnership of Johnson and Clayton, consisted of the purchasing, breeding, raising, and selling of cattle. The inventory basis of accounting was employed in such operation. There was no segregation in the inventories of the cattle purchased and the cattle raised. The proceeds of the sales of the cattle purchased and the cattle raised were commingled and such funds were used in the further operation of purchasing, breeding, raising, and selling cattle. Since the increase of the cattle was community property, the commingling of the proceeds of sales thereof and of any profits accruing thereon from inventories with like proceeds and profits from such cattle, if any, as were not community property, constituted, under Texas law, the whole of the commingled funds community income, one-half of which was taxable each to petitioner and his wife.

The final question to be answered is, What effect, for income tax purposes, does the alleged partnership agreement of January 1, 1937, have? "Arrangements within families for the division of income, while not necessarily subject to condemnation because of the close relationship of the parties, are always subject to careful scrutiny and clear and convincing evidence is required to establish their bona fides." *Harry C. Fisher*, 29 B. T. A. 1041, 1048; affd., 74 Fed. (2d) 1014. There is nothing in the record to show that the purpose of petitioner and his wife in executing the partnership agreement was to effect a division between them of taxable income. However, it is not shown that petitioner's wife made any contribution, either in capital or services, to the partnership. There is a recital in the purported partnership agreement to the effect that it confirms an oral partnership agreement among the same parties under which the partnership business had theretofore been conducted and that petitioner's wife owned 25 percent of such business and assets. This claim of ownership is

obviously based on petitioner's contention that the Johnson interest in the partnership was acquired with commingled funds of petitioner and his wife. Such funds are in the same category as those hereinabove discussed in connection with the acquisition of the Texas and New Mexico lands. Accordingly, we hold that there is no showing of a contribution of capital to the partnership by petitioner's wife. We hold, therefore, that the agreement in question was ineffective to constitute her a member of the partnership.

A résumé of our conclusions is: (1) That this proceeding is not barred by the doctrine of *res judicata;* (2) that the rents, profits, and issues from the lands in Texas are community income and taxable to petitioner and his wife as such; (3) the rents, profits, and issues from the lands in New Mexico are not community income and are taxable to petitioner; (4) that the oil royalties from the Slash ranch in Texas are the community income of petitioner and his wife and taxable as such; that oil royalties from all the other lands here involved are taxable to petitioner as his separate income; (5) that the proceeds from the sales of the Texas cattle, including the Johnson interest in the cattle of the Clayton and Johnson partnership, are community income to petitioner and his wife and taxable as such; and (6) that the partnership agreement was ineffectual to constitute petitioner's wife a member of the Clayton and Johnson partnership.

*Decision will be entered under Rule 50.*