WILLIAM FLEMING, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 109838.   Promulgated June 6, 1944.

*Harry C. Weeks, Esq.,* for the petitioner.
*Frank B. Appleman, Esq.,* for the respondent.

**OPINION.**

HILL, *Judge*: The basic issues raised by the original pleadings are whether petitioner made gifts by reason of the distribution of income

from a trust of which he was a donor and the trustee and, if so, whether he is liable for penalties for failure to file gift tax returns. However, petitioner pleads *res judicata* and estoppel as a bar to the consideration of the basic issues. It is necessary, therefore, to first pass upon these pleas, for, if they can be sustained, then the basic questions become moot.

Petitioner asserts that our decision in Docket No. 110692 is *res judicata* as to the taxability as a gift of petitioner of one-half the distributions of Wm. Fleming, trustee. Docket No. 110692 involved the determination of an income tax deficiency against petitioner for 1938 based solely upon the theory that he was taxable upon one-half the income of Wm. Fleming, trustee. Decision of no deficiency was entered. Petitioner argues that such decision conclusively determines not only that there was no additional income tax due from him for 1938, but that his transfers in trust in 1933 and 1934 constituted completed gifts to his daughter when made. This contention is without merit to the extent that it includes the gift question—and that is the only one with which we are here concerned. The decision of no deficiency in Docket No. 110692 was entered pursuant to a written stipulation authorizing us so to do. We were not called upon to resolve the question there posed by the pleadings. A judgment based upon a stipulation filed in complete settlement of a tax case is not a decision on the merits which will support a plea of *res judicata* raised in a proceeding involving a different cause of action. *Margaret A. C. Riter*, 3 T. C. 301, and authorities cited therein.

Secondly, petitioner asserts that the judgments entered in the Board's Docket Nos. 95061 and 106260 and affirmed by the Fifth Circuit Court of Appeals at, respectively, 121 Fed. (2d) 7, and 135 Fed. (2d) 701, are *res judicata* of the basic issues here. We do not agree. The issues which were presented and decided in the cases relied upon are stated in the findings of fact and will not be repeated here. It is necessary to note only that such issues in no way questioned the propriety of taxing to the fiduciary the income of Wm. Fleming, trustee, less the distributions to the beneficiary and other proper deductions. Moreover, the cases did not involve gift taxes. In considering the application of the doctrine of *res judicata* to a different cause of action, one inquiry must be "whether the point or question to be determined in the later action is the same as that *litigated* and determined in the original action." (Emphasis supplied.) *Tait* v. *Western Maryland Ry. Co.*, 289 U. S. 620. In *Hartford-Empire Co.* v. *Commissioner*, 137 Fed. (2d) 540, affirming 43 B. T. A. 113, the court said: "How far a decision upon a question of law can be an estoppel in a later action upon a different cause of action is a vexed question, *but no one has ever suggested that it can extend to* matters not actually litigated." (Emphasis supplied.) Since in Docket Nos. 95061 and 106260 nei-

ther Wm. Fleming, trustee, nor respondent made any contention respecting the propriety of taxing the trust net income to the trustee, it follows that such contention was not made the subject of litigation in those proceedings. Nor should it be supposed that, in redetermining a deficiency, we examine and pass upon each item which goes into the computation of the taxpayer's tax liability. Such is not our function. On the contrary, we consider only those questions which are presented by the pleadings and are not conceded or abandoned prior to the submission of the case. The question as to whom the trust income was properly taxable based upon the terms of the trust instrument was not decided in the prior proceedings and, therefore, even assuming a decision on this point would govern gift tax liability, the judgments are not a bar to the consideration of this case on its merits. *Blaffer* v. *Commissioner*, 134 Fed. (2d) 389; *Britt* v. *Commissioner*, 114 Fed. (2d) 10; *Harvey Coal Corporation* v. *United States*, 35 Fed Supp. 756; *W. D. Johnson*, 1 T. C. 1041; *E. T. Weir*, 47 B. T. A. 974. The doctrine of *res judicata* is not applicable to estop a subsequent cause of action where the issues are not identical. *Louisville Property Co.* v. *Commissioner*, 140 Fed. (2d) 547, or where the factual situations and legal situations are not the same in the two cases. *Leicht* v. *Commissioner*, 137 Fed. (2d) 436.

As a second ground barring the consideration of the case on its merits, petitioner urges upon us the application of equitable principles which may be termed quasi estoppel. It is not his contention that there exists here an estoppel in the usual sense of misrepresentation and reliance thereon, but, rather, that respondent is prevented from pressing the deficiencies involved in the instant proceeding because of his alleged inconsistent positions respecting past deficiencies determined against members of the Fleming family.

This contention might be disposed of by repeating the following language from the Supreme Court's opinion in *Commissioner* v. *Gooch Milling & Elevator Co.*, 320 U. S. 418: "The Internal Revenue Code, not general equitable principles, is the mainspring of the Board's jurisdiction." Thus we conceive it to be our function in this case to decide whether petitioner made taxable gifts within the meaning of section 501 of the Revenue Act of 1932 during the years in question. not whether respondent in equity and good conscience should be barred from taking the stand which he does, regardless of its correctness.

In any event, it is clear that petitioner's contention lacks merit. It is true that respondent assessed income taxes on the income of Wm. Fleming, trustee, against Wm. Fleming. trustee, or Mary, the beneficiary, even after the Supreme Court had handed down its decisions in *Sanford's Estate* v. *Commissioner*, 308 U. S. 39, and *Rasquin* v. *Humphreys*, 308 U. S. 54, wherein gifts in trust were held incomplete and not subject to gift tax when the donor retained power to change

the beneficiary. However, in so doing, respondent did not necessarily take a position inconsistent with his present one, i. e., that the transfers by petitioner to Wm. Fleming, trustee, were incomplete and that taxable gifts thus occurred when distributions were made to Mary. We say this because respondent was then dealing with the taxation of income, while here he is dealing with the taxation of gifts, where the primary question is whether there have been completed gifts *inter vivos*. In the latter situation the *Sanford* case requires the gift tax to be correlated with the estate tax, without regard to what happens under the income tax. *Higgins* v. *Commissioner*, 129 Fed. (2d) 237; certiorari denied, 317 U. S. 658, and see the excellent discussion therein regarding the interrelation of the income, estate, and gift taxes and the many perplexities thereby presented.

Moreover, if an implied interpretation could be said to have been placed upon the effect of the trust taxwise in the income tax matters, it was not respondent who was responsible for it, but the taxpayers themselves. Wm. Fleming, trustee, and Mary voluntarily reported the trust income respectively retained and received in distribution. Adjustments made by respondent merely effected the allocation of deductions and other minor changes. Thus, any alleged position taken by respondent respecting the taxation of the Wm. Fleming, trustee, income, so far as concerns the returns of the fiduciary and beneficiary, was induced by the taxpayer. Naturally, it was to the Fleming family's advantage to divide their income between Wm. Fleming, Anna Maud, Mary, and Wm. Fleming, trustee. But we do not think public policy would be best subserved in allowing taxpayers to impart to their acts tax consequences disputable only if immediately questioned by respondent. Finally, assuming *arguendo* that respondent did take a positive position in connection with transfers to Wm. Fleming, trustee, this fact, in the present circumstances, does not disable him from adopting a different view now. In the absence of a closing agreement, valid compromise, final adjudication, or the running of the statute of limitations, the Commissioner may make new and different assessments against the same taxpayer, for the same year, and in respect of the same type of tax. *Oak Worsted Mills* v. *United States*, 36 Fed. (2d) 529; 38 Fed. (2d) 699; affd., 282 U. S. 409; *Laher Auto Spring Co.* v. *United States*, 5 Fed. Supp. 38; *Mt. Vernon Trust Co.* v. *Commissioner*, 75 Fed. (2d) 938; *Seeley* v. *Helvering*, 77 Fed. (2d) 323; *H. S. Paulus*, 30 B. T. A. 608; affd., 91 Fed. (2d) 192. It perforce follows that he may make different assessments on different theories in the far less compelling situations, such as we have here, where other taxpayers, years, and types of taxes are involved. That Congress recognized that both taxpayers and the Commissioner sometimes take inconsistent positions in the treatment of taxes is apparent from its enactment of section 820 of the Revenue Act of 1938, now section 3801 of the Internal

Revenue Code, the purpose of which is to "take the profit out of inconsistency." See Senate Finance Committee Report, 75th Cong., 3d sess., S. Rept. 1567.

We conclude and hold that the doctrines of *res judicata* and estoppel are not available to petitioner in this proceeding. Accordingly, we proceed to a consideration of the controversy on its merits.

As suggested above, it is respondent's contention that petitioner is liable for a gift tax on one-half of the amounts distributed annually to Mary from income of the trust of which petitioner and his wife were grantors and under which Mary was the beneficiary. This contention is based necessarily upon the proposition that the gifts in trust of $100,000 and the 1,200 shares of F. H. E. Oil Co. stock were incomplete as to the one-half portion transferred by petitioner. It is this proposition which first must be examined. Petitioner denies that his original gifts were incomplete and, in the alternative, asserts that, in any event, the incompleteness attached only to one-fourth of his contributions to Wm. Fleming, trustee, this being the maximum amount which he could divert to other than religious, charitable or educational institutions.

Petitioner and his wife created the trust known as Wm. Fleming, trustee, and provided the corpus from their community property. The parties agree that as a consequence one-half the corpus is deemed to have come from petitioner and one-half from Mrs. Fleming. Petitioner was constituted trustee and, as such, was specifically given the power to make gifts at any time from the trust property or its revenues to charitable, religious or educational institutions or enterprises and relatives of the grantors. Total gifts to relatives could not exceed 25 percent of the corpus of the estate, including accumulated revenues. Otherwise the amount of the gifts which could be made was in the trustee's absolute discretion. Manifestly, this power was so broad as to enable petitioner, in his capacity as trustee, to divert the entire corpus and income of Wm. Fleming, trustee, from the named beneficiary. It is well settled that a gift in trust with power in the donor to revoke it is not a taxable gift, since the transfer is incomplete. *Sanford's Estate* v. *Commissioner*, *supra*; *Rasquin* v. *Humphreys*, *supra*; *Hesslein* v. *Hoey*, 91 Fed. (2d) 954. Is the rule otherwise when the power to revoke is in the trustee who is the same individual as the donor? We think not. *Welch* v. *Terhune*, 126 Fed. (2d) 695. In *Cockrell* v. *United States*, 39 Fed. Supp. 148, the Court of Claims held a gift in trust to be incomplete where the grantor had reserved the power to grant the trustee additional power. Although the trustees were independent, the court pointed out that under the reservation the grantor might grant power to the trustees to change the beneficiaries and their distributive shares. Hence it held the doctrine of *Sanford's Estate* to be applicable. Certainly there is

greater reason here for the application of the same doctrine. It can not be gainsaid that upon the will of petitioner alone depends Mary's eventual receipt of the trust corpus and income. There can be no distinction between his will as grantor and his will as trustee.

We are not impressed with petitioner's alternative contention that the incompleteness of his contributions attached only to so much thereof as could not be diverted to religious, charitable, or educational institutions. Petitioner has been able to point to no statutory law or case which would support this proposition. However, he asserts that it is supported by public policy and the liberal attitude of Congress and the courts toward gifts for such purposes. Assuming that philanthropic gifts are looked upon with favor, we fail to see how petitioner is helped here. If petitioner's position were sound, then Mary would be subject as donee to a gift tax on property which she might never possess, provided petitioner failed to pay the tax. In similar circumstances it was said in *Sanford's Estate* v. *Commissioner, supra:*

It can hardly be supposed tnat Congress intended to impose personal liability upon the donee of a gift of property, so incomplete that he might be deprived of it by the donor the day after he had paid the tax. Further, § 321 (b) (1), 43 Stat. 315, exempts from the tax, gifts to religious, charitable, and educational corporations and the like. A gift would seem not to be complete, for purposes of the tax, where the donor has reserved the power to determine whether the donees ultimately entitled to receive and enjoy the property are of such a class as to exempt the gift from taxation. * * *

and in *Hesslein* v. *Hoey, supra:*

The very day after creating the trust the settlor might exercise his reserved power by irrevocably appointing the corpus to a charity, to which a gift would be exempt from tax. Section 505, Revenue Act 1932 (47 Stat. 247, as amended [26 U. S. C. A. § 554]). We cannot believe that personal liability was meant to be imposed upon the originally named beneficiary in such a case. * * *

We think this language provides an adequate answer to this alternative contention of petitioner.

Still another alternative contention requires attention. Petitioner points to the fact that less than one-half the income from Wm. Fleming, trustee, actually was distributed to Mary in each year in question save in 1938. Since respondent assessed income taxes against Mary upon distributions received from Wm. Fleming, trustee, and collected and retained such taxes, petitioner asserts that respondent thus has allocated the distributions as coming from income arising from property contributed by Mrs. Fleming, as to which the original gifts were complete; that, accordingly, there have not been gifts in each year from petitioner to Mary, but that income from the portion of the contributions must be deemed to have been added to the corpus. Petitioner believes this to be the only theory by which "respondent's incon-

sistencies can be reconciled." He admits that the trust instrument contains nothing in connection with the allocation of distributions from particular sources of income where less than the whole income is distributed. This theory is novel and, as such, interesting, but it is not compelling. In the first place it assumes that respondent's positions as taken in the income tax cases and gift tax cases are inconsistent. But, as we have explained above, this is a premise which is not necessarily true. Secondly and also as discussed above, respondent normally can not be held to a particular course even as regards the same taxpayer and the same kind of tax liability, much less as regards different taxpayers and tax liabilities. Finally, if respondent can be said to have made any allocation of distributions, it must be by reason of his action in making the determination forming the basis for this proceeding, since his determination is presumptively correct. The present determination was made on the assumption that one-half the distributions represented income from the property contributed by petitioner. This seems eminently fair to us, since petitioner and his wife contributed equal portions of the original corpus of Wm. Fleming, trustee. It is also consistent with the result reached upon the question of allocating trust distributions to taxable and tax exempt income of a trust, a somewhat analogous situation. See *J. Cornelius Rathborne*, 37 B. T. A. 607; affd., 103 Fed. (2d) 301; 109 Fed. (2d) 463; *Mrs. Georgie W. Rathborne*, 37 B. T. A. 936.

The gifts upon trust, incomplete when made in 1933 and 1934, have not since become complete, for it is stipulated that no change in the terms of the trust instrument has been made and, accordingly, the powers rendering the gifts incomplete remain outstanding. On the other hand, Mary did receive distributions from the income of Wm. Fleming, trustee, in each of the years 1935 through 1939 and, to the extent that such distributions were made from income arising from the one-half of the trust property attributable to petitioner's transfers, they constituted gifts by petitioner to Mary upon which petitioner is liable for gift tax. *Chas. F. Roeser*, 2 T. C. 298; *Leonard C. Yerkes*, 47 B. T. A. 431. It is so held and respondent's determination to this effect is approved.

Since our holding that one-half of the amount distributed from the trust income to Mary in each of the years 1935 to 1939, inclusive, was a gift to her by petitioner is based on our construction that there was no completed gift under the trust agreement by petitioner in 1933 or 1934, or at all, it follows that there was no effective taking of a specific exemption by petitioner in respect of the conveyances in trust. Hence there was no exhaustion in whole or in part of the specific exemption allowable to petitioner in respect to gifts through the application thereof in gift tax returns erroneously made by petitioner in respect to the conveyances in trust in 1933 and 1934. Our conclu-

sion in this regard is confirmatory of respondent's determination to the same effect in determining the deficiencies here involved. Also, pursuant to such determination and consonant therewith, respondent determined that the full amount paid by petitioner as a gift tax in respect of the conveyance in trust in 1934 constituted an overassessment. Had an amount been paid by petitioner as a gift tax in respect of the conveyance in trust in 1933, the same considerations upon which the overassessment for 1934 was determined would have obtained.

The statutory exemption is allowable to petitioner in respect of the gifts here involved if timely claimed by him. In his protest against the proposed determination of the deficiencies here involved petitioner assigned (alternatively) as one of the grounds of such protest that respondent failed to allow him credit for the specific exemption as to gifts and stated that the allowance of such exemption "would wipe out any deficiency due under any theory for 1935, 1936 and 1937, and would materially reduce that asserted for 1938 and 1939."

The protest in question antedated the deficiencies involved and the statements and representations therein relative to specific exemptions clearly indicate petitioner's insistence that if because of the distributions of trust income to his daughter it should be determined that he made gifts to her, he should be allowed the full amount of the specific exemption, applicable first to the year 1935 and then to each succeeding year until its exhaustion.

Petitioner made no claim for credit for specific exemption in a gift tax return applicable to the taxable years here involved or in his petition herein, apparently for the reason that according to his contention he made no gift in either of such years to which to apply the exemption. We hold against petitioner's contention in this regard, but we think he should have the benefit of the specific exemption on the ground that he claimed it in the alternative in his protest against the proposed deficiencies. Such exemption should be applied first to the gift in the year 1935 and consecutively to the gifts in the subsequent years until it is exhausted.

The second basic question is whether petitioner is liable for a penalty of 25 percent of each year's tax for failure to file gift tax returns. Section 3612 (d) (1) of the Internal Revenue Code provides for the addition of an amount not to exceed 25 percent of the tax in instances where a tax return is not made and filed within the prescribed time. This section is applicable in the case of failure to make and file gift tax returns. Sec. 1018, Internal Revenue Code. So far as pertinent here, section 519 of the Revenue Act of 1932 is the same as section 3612 (d) (1) of the Internal Revenue Code. Petitioner filed no gift tax returns for the years 1935 through 1939, although, as we have held, he made taxable gifts in each of such years. In these circumstances the addition to the tax is mandatory. *Chas. F. Roeser, supra.* Petitioner

did furnish respondent with all information requested concerning the trust and its management, and it is contended that by so doing petitioner must be deemed to have filed informal returns, thus avoiding the imposition of the additional tax. But the statute permits of no substitute for the filing of a formal return. Furthermore, as we said in the *Roeser* case, "The question of reasonable cause arises only in the case of delinquent returns, not when taxpayer has filed no return whatever." We have no alternative but to sustain respondent on this issue.

The final question was raised by amended answer. At petitioner's instance, but upon Mrs. Fleming's formal application, single premium life insurance and annuity contracts were written on her life in the year 1938. The primary beneficiary under the insurance contracts was Mary, the Flemings' daughter. Premiums which totaled $42,431.50 were paid for out of community funds. By the terms of the insurance contracts the usual incidents of ownership were reposed in Mrs. Fleming. She was, of course, the annuitant under the annuity contracts. Respondent contends that petitioner thereby made a gift to Mrs. Fleming measured by one-half the premiums or one-half the value of the contracts, being $21,215.75. The resultant issue is drawn by petitioner's denial. On this issue the burden of proof falls upon respondent.

Respondent in his brief has cited numerous cases which support general propositions of law, as, for example, that insurance contracts may be the subject of gifts and that a husband may make a gift of his interest in community property to his wife. Petitioner for the most part, does not controvert the correctness of such propositions, but he does very properly point out that we are not concerned with what he legally could have done, but rather with what was done in this particular instance.

In determining whether the act of purchasing the instant insurance policies must be deemed a gift measured by one-half of the premiums paid, we look to the attendant legal consequences from the standpoint of the ownership of the policies after the completion of the transaction. Was Mrs. Fleming thereby invested with complete ownership of the choses in action represented by the insurance contracts, or did petitioner share in the ownership? Or, putting it another way, did the contracts become the separate property of Mrs. Fleming or did they become the property of the community? Under the express terms of the contracts themselves Mrs. Fleming was accorded customary rights as insured, such as the right to change beneficiaries, surrender the policies for a cash value, and borrow from the insurers upon the security of the policies. These rights are commonly referred to as incidents of ownership. As such they are indicative of separate ownership in Mrs. Fleming and respondent bases his contention largely on their inclu-

sion in terms in the policies in question. However, the express terms contained in the policies are not the sole provisions to be considered in determining the rights and obligations of the parties thereunder. "Contracts of insurance are presumed to have been made with reference to the law of the land, including the statutory laws which are in force and are applicable, and such laws enter into and form a part of the contract, as much as if actually incorporated therein." Couch-Cyclopedia of Insurance Law, ¶150. See also *First Texas Prudential Insurance Co.* v. *Sorley* (Tex. Civ. App.), 272 S. W. 346 (1925) ; *Germania Life Insurance Co.* v. *Peetz* (Tex. Cir. App.), 47 S. W. 687 (1898). We presume that the parties here contracted with reference to the community property law of Texas. Hence, the express rights given Mrs. Fleming under the contracts must be read in conjunction with any limitation upon such rights which Texas law may demand.

Some confusion has existed in the Texas courts respecting property interests arising out of the purchase of life insurance. Older cases are difficult if not impossible of reconciliation. See Huie, Community Property—Life Insurance (1939), 17 Tex. Law Review 121, for an analysis which has been cited with approval by several recent Texas decisions. Late cases, however, settle many of the questions which have arisen between husband and wife as to property rights implicit in such contracts. Each of the following cases involved life insurance taken out on the husband's life with premiums having been paid from community funds. In *Womack* v. *Womack*, 172 S. W. (2d) 307 (1943), the cash surrender value of the policies was held to be community property. To the same effect is *Locke* v. *Locke* (Tex. Civ. App.), 143 S. W. (2d) 637 (1940), and *Berdoll* v. *Berdoll* (Tex. Civ. App.), 145 S. W. (2d) 227 (1940), but limited, in the last mentioned case, to the same proportion thereof as premiums paid from community funds bore to premiums paid from the husband's separate funds. In *Blackmon* v. *Hansen*, 169 S. W. (2d) 962 (1943), one-half of the proceeds on insurance payable to the husband's estate was held to be property of the wife. The *Womack* case also involved, as here, a policy taken out on the life of the wife the premiums on which were paid from community funds. The cash surrender value of this policy was held to be community property. In our opinion these recent authorities require the conclusion that property rights evidenced by life insurance contracts on the life of either the husband or the wife become community property under Texas law when the cost is met with community funds. See *Joe J. Perkins*, 1 T. C. 982. They become such despite the fact that the policy provisions in terms purport to grant such rights solely to the insured. We find that the instant policies, by the fact of their purchase and issue under the present circumstances, did not become the separate property of Mrs. Fleming. Hence, their purchase did not constitute a gift to be measured by any amount.

The cases cited by respondent to the effect that the irrevocable assignment of insurance policies to another constitutes a gift of the value of the policies are not in point for the obvious reason that here there was no assignment, irrevocable or otherwise.

There is even less in the record to support the imposition of a gift tax upon one-half of the cost of the annuities. They were purchased with community funds, became community property and their avails constituted community funds. In fact, the annual payment went back into the same account from whence was drawn the money for the original premiums. Any tie-up between their purchase and the writing of the insurance is immaterial to the issue in view of our holding with respect to the insurance.

Respondent's prayer that petitioner's gift tax deficiency and penalty for 1938 be increased by including in the computation of gifts for that year an additional $21,215.75 is denied.

*Decision will be entered under Rule 50.*