ESTATE OF DANIEL WADE KELLY, DECEASED, ETHEL CAMPBELL KELLY, JOE T. KELLY, ETHEL KELLY MCGINTY, AND MARJORIE DAN KELLY LOMAX, SOLE HEIRS AND DISTRIBUTEES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ETHEL CAMPBELL KELLY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOE T. KELLY AND GUSSIE KELLY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 60753–60755. Filed December 10, 1958.

*E. Chas. Eichenbaum, Esq.*, and *Leonard L. Scott, Esq.*, for the petitioners.

*Jackson L. Bailey, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* 1. Did the decedent and his wife make valid gifts of their community property on April 28, 1950 ? The petitioners contend that any gifts made were not valid because (a) decedent was incompetent at the time of the alleged gifts; (b) he gave away all of his property, and, therefore, the gifts were void under Louisiana law; (c) the gifts were intended to take effect only on death and were invalid testamentary dispositions; and (d) the 1952 judgment adjudicated the gifts to be invalid and is controlling.

Article 1475 of the Louisiana Civil Code provides that "[t]o make a donation either inter vivos or mortis causa, one must be of sound mind." The burden of proving that the decedent was not of sound mind at the time he executed the acts of donation on April 28, 1950, was on the petitioners. They have not sustained this burden. The evidence submitted by them indicates that the decedent on April 28, 1950, was seriously ill, emotionally upset, depressed by reason of the fact that he knew he had but a short time to live, and that he was receiving drugs for the alleviation of pain. It does not convince us, however, that he was not mentally competent and did not know what he was doing when he executed the acts of donation.

Article 1497 of the Civil Code of Louisiana provides that "[t]he donation inter vivos shall in no case divest the donor of all his property; he must reserve to himself enough for subsistence; if he does not do it, the donation is null for the whole." Cf. *Kirby* v. *Kirby*, 176 La.

1037, 147 So. 71; *Kelly* v. *Kelly*, 131 La. 1024, 60 So. 671; *Welch* v. *Forrest Lumber Co.*, 151 La. 960, 92 So. 400. The prohibition against making a donation *omnium bonorum* applies to a donation made by a man to his wife as well as to a donation made by him to a stranger. *Succession of Suarez*, 131 La. 500, 59 So. 916.

The decedent on April 28, 1950, made three gifts to his children. When these gifts were consummated, he still retained his community interest in his home, household furnishings and personal effects, his automobile,[1] and cash in bank amounting to about $26,000. Decedent withdrew the cash in bank after April 28, 1950, and placed it in United States bonds in the name of his wife. The bonds were issued in June 1950. It is not possible to determine from the evidence exactly when the cash was withdrawn from the bank. The only evidence relating to this withdrawal was given by the decedent's son, Joe T. Kelly. He testified that he presumed the decedent signed the check for the withdrawal; that he went to the bank and withdrew the money; and that he "would say" the withdrawal was made in May although he could not recollect exactly when it was made. He also testified, "I think the check for those bonds was written right at the time when all the rest of the instruments, in other words, he [the decedent] had a housecleaning there all at once."

In support of their contention that the gifts were void because decedent did not retain enough for subsistence, the petitioners urge that the gifts to the three children of decedent and the "gift of the cash" to his wife were part of the same transaction; that all gifts were, so to speak, part of decedent's plan of complete disposal of his property, known to and acquiesced in by the donees; and that there was, in substance, one gift. They argue that if a gift of all of one's property is void, it would be illogical to hold that where such a gift is made in segments, the last donee must disgorge, but the donee who is first by a few days or a few minutes may retain the fruits of such forbidden act.

There is no convincing evidence that on April 28, 1950, when decedent made the gifts to his three children, he was contemplating any gift to his wife or then took any step to make such a gift.[2] Joe T. Kelly's testimony in this respect was vague and unsatisfactory. All that the evidence really shows is that at some undisclosed time after April 28, the decedent withdrew approximately $26,000 from his bank account and placed these funds in United States bonds in the name of

---

[1] The uncontested value of the home is $5,000; the household furnishings and effects $1,800; and the automobile $500.

[2] In the petition filed in the Fifth Judicial District Court after decedent's death mention is made of "purported" donations to the three children on April 28, 1950, but no mention is made of any donation on that date to decedent's wife. Furthermore, although Louisiana gift tax returns were filed reporting the gifts to the three children, no return was filed reporting a gift to the wife, and an affidavit attached to the returns filed, which was signed by the three children, contains the statement that they were the sole and only donees of the decedent.

his wife. Assuming that by these acts the decedent intended to make a gift to her, that gift appears to have been a gift of bonds and not a "gift of the cash." Such a gift could not have been completed prior to the purchase of the bonds, which occurred after the consummation of the gifts to the children. In the light of the evidence produced we cannot find that the gifts to the children, and the gift, if any, to the wife, were part of the same transaction, and, in substance, one gift. The former did not leave the decedent without sufficient property for subsistence since he retained at least $26,000 in cash in addition to his home, personal effects, and automobile. Moreover, even if the assumed gift of the $26,000 in bonds be combined with the three gifts to the children, it is not clear that he so stripped himself of assets as to render the gifts void. The estate tax return shows community "cash on hand" in the amount of $1,650, and we cannot say on the record before us that the decedent failed to retain enough for his subsistence so as to bring article 1497 of the Louisiana Civil Code into play.

Petitioners contend further that the gifts made by the decedent on April 28, 1950, were not intended to take effect presently, but only on death, and were, at best, invalid donations *mortis causa*. Pertinent provisions of the Louisiana Civil Code are noted in the margin.[3] We are unable to agree with petitioners. The acts of donation made by decedent on April 28, 1950, clearly evidence his intention to make present gifts to his children of the property described therein. They were passed and signed in the presence of two witnesses and a notary. They were accepted by the donees in precise terms, and were recorded. There is no expression in the acts indicating that the gifts

---

[3] Art. 1467. Gratuitous acquisitions or donations—Forms.—Property can neither be acquired nor disposed of gratuitously, unless by donations inter vivos or mortis causa, made in the forms hereafter established.

Art. 1468. Donation inter vivos defined.—A donation inter vivos (between living persons) is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it.

Art. 1469. Donation mortis·causa defined.—A donation mortis causa (in prospect of death) is an act to take effect, when the donor shall no longer exist, by which he disposes of the whole or a part of his property, and which is revocable.

Art. 1536. Immovables and incorporeal things.—An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity.

Art. 1540. Donation inter vivos—Acceptance required.—A donation inter vivos shall be binding on the donor, and shall produce effect only from the day of its being accepted in precise terms.

The acceptance may be made during the lifetime of the donor by a posterior and authentic act, but in that case the donation shall have effect, with regard to the donor, only from the day of his being notified of the act establishing that acceptance.

Art. 1550. Effect of acceptance.—A donation, duly accepted, is perfect by the mere consent of the parties; and the ownership of the objects given is transferred to the donee, without the necessity of any other delivery.

Art. 1554. Registry—Donation and acceptance mortgageable property.—When the donation comprehends property that may legally be mortgaged, the act of donation, as well as the act of acceptance, whether the acceptance be made by the same or a separate act, must be registered, within the time prescribed for the registry of mortgages, in a separate book kept for that purpose by the register of mortgages * * *

were to take effect at or after the death of the decedent. Cf. *Succession of Sinnott* v. *Hibernia Nat. Bank*, 105 La. 705, 30 So. 233; *Johnson* v. *Waters*, 111 U. S. 640. We hold that the donations made by the decedent on April 28, 1950, were valid gifts inter vivos under the laws of Louisiana and were effective on that date, when the acts of donation were executed.

The petitioners also contend that the effect of the 1952 State court proceedings in the Fifth Judicial District Court was to adjudicate that there never was an effective 1950 gift under Louisiana law, and that this determination is binding on this Court. In the joint petition filed in the State court proceedings, the petitioners did not allege that the decedent attempted to make, or made, any gift to his wife prior to his death, but simply urged that decedent's desire that she should have full and complete ownership of his home, household furnishings and personal effects, automobile, and United States bonds be recognized. With respect to the property included in the 1950 acts of donation, the petitioners alleged that the decedent on April 28, 1950, "purported and attempted to donate" certain property to each of his three children "in contemplation of death"; and that they desired that the wishes of the decedent, as expressed in the acts of donation, be given full force and effect. They urged that the children should be decreed to "inherit and/or receive the said properties and be sent and put in possession thereof in conformity with the wishes of the" decedent, and that the court fix the amount of the inheritance taxes, if any, due to the State of Louisiana, as set out in the petition. As we read the petition it reflects an agreement on the part of the petitioners that the children had received the property which the decedent "purported and attempted to donate" to them in the acts of donation and that they were liable for specified amounts of inheritance taxes. The only thing accomplished by the judgment was the fixing of the amounts of the State of Louisiana inheritance taxes, which would be the same whether the property in question passed by inheritance or as gifts in contemplation of death.[4] The court does not appear to have decided that the property was acquired by the children by inheritance rather than by gift. Even if it be assumed,

---

[4] Title 47 of the Louisiana Revised Statutes, Revenue and Taxation, 1950, provides:

Sec. 1201. *Imposition of tax*

A tax is hereby imposed for the calendar year 1950 and each calendar year thereafter upon the transfer during such calendar year by any person, resident or nonresident, of property by gift.

The tax shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is movable or immovable, and corporeal or incorporeal. The tax hereunder shall apply to all such transfers made after December 31, 1949.

Sec. 1211. *Credit against inheritance tax in certain cases*

If a tax has been imposed on any gift under this Chapter, and thereafter upon the death of the donor an inheritance tax is imposed upon the same gift by this State, there

however, that the judgment could be construed, in effect, to be an adjudication that the children had received the property from the decedent by inheritance,[5] rather than by gift, the judgment, which was in substance a consent judgment not obtained in an adversary proceeding, would not be binding on this Court. Cf. *Saulsbury* v. *United States*, 199 F. 2d 578 (C. A. 5), certiorari denied 345 U. S. 906; *Wolfsen* v. *Smyth*, 223 F. 2d 111 (C. A. 9).

After a careful consideration of the contentions of petitioners, our conclusion is, and we hold, that decedent and his wife on April 28, 1950, made valid gifts inter vivos to each of their three children, which were subject to tax under section 1000 (a) of the 1939 Code.[6]

2. Petitioners challenge the additions to tax determined by respondent for failure to file gift tax returns. Section 3612 (d) (1) of the 1939 Code provides for the addition of an amount not to exceed 25 per cent of the tax in instances where returns are not filed. This section is applicable where required gift tax returns are not filed. Sec. 1018, I. R. C. 1939. We have held that the decedent and his wife made taxable gifts during the year 1950, and the returns called for by section 1006 of the 1939 Code were not filed. In the circumstances the imposition of the addition to tax provided for in section 3612 (d) (1) is mandatory. *William Fleming*, 3 T. C. 974, 988–989. The respondent did not err in determining that petitioners, Estate of Daniel Wade Kelly and Ethel Campbell Kelly, are liable for additions to tax for failure to file required gift tax returns.

3. The remaining issue relates to the basis for gain on certain property sold by Joe T. Kelly in 1950 and 1952. The property sold was a part of the property contained in the 1950 act of donation to Joe T. Kelly from decedent and his wife. The parties agree that if Joe T. Kelly acquired the property by gift the basis is $5.10 an acre,

---

shall be credited against the inheritance tax resulting from the inclusion of such gift in the computation of such inheritance tax an amount equal to the gift tax resulting from the inclusion of such gift in the computation of the gift tax on gifts from such donor to the donee who received such gift.

Sec. 2401. *Levy of tax*

There is hereby levied a tax upon all inheritances, legacies and donations and gifts made in contemplation of death, except such as hereinafter specifically exempted.

Sec. 2402. *Exemptions*

The following shall be exempt from the tax imposed in this Part:

(1) Inheritances, legacies and donations and gifts made in contemplation of death, to a direct descendant by blood or affinity, ascendant or surviving spouse of decedent, to the amount or value of five thousand dollars.

(2) Inheritances, legacies and donations and gifts made in contemplation of death to a collateral relation of decedent (including brothers or sisters by affinity) to the amount or value of one thousand dollars.

[5] If such were the case we would have the extraordinary situation in which Joe T. Kelly would have been given more than the share of the decedent's property that he would have been entitled to as an heir, and the other two children would have obtained less than their respective shares.

[6] Section 1000 (a) provides that "[f]or the calendar year 1940 and each calendar year thereafter a tax * * * shall be imposed upon the transfer during such calendar year by any individual * * * of property by gift."

and if by inheritance the basis is $20 an acre. Inasmuch as we have held that it was acquired by gift, the correct basis is $5.10 an acre as determined by respondent.

*Decisions will be entered under Rule 50 in Docket Nos. 60753 and 60754.*

*Decision will be entered for the respondent in Docket No. 60755.*

