Ruth T. **LENGSFIELD**, Coralie Mayer Lengsfield and Blanche L. Brown, Petitioners,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent.

No. 16000.

United States Court of Appeals Fifth Circuit.

Feb. 27, 1957.

Albert B. Koorie, New Orleans, La., Roehner & Roehner, New York City, of counsel, for petitioner.

George F. Lynch, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., John Potts Barnes, Chief Counsel, Internal Revenue Service, John M. Morawski, Sp. Atty., Internal Revenue Service, Lee A. Jackson, A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and CAMERON and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal involves deficiencies in income tax determined by the Commissioner against the taxpayers for the calendar years 1947 to 1950, and sustained by the Tax Court in findings of fact [1] and an opinion not officially reported.

---

1. As found by the Tax Court the material facts may be summarized as follows:

In December, 1919, Benjamin Lengsfield had four sons and three daughters, one of whom, Blanche, is a party to this ap-

peal. He formed a partnership that month with three of his sons, Jacob, Harry, and Byron.

In December, 1927, Blanche's husband died, leaving her with three minor chil-

The sole question presented is whether the Tax Court erred in holding that monthly payments received by taxpayers from a corporation in which they held stock constituted distributions of corporate earnings taxable to the recipients as dividends rather than non-taxable gratuities.

In support of its ultimate conclusion, that the monthly payments received by the petitioners were distributions of profits taxable to the recipients as dividends, the Tax Court pointed to the undisputed facts: (1) that the recipients, owning 63 percent of the stock, were majority stockholders; (2) that most of the others were close relatives; (3) that two were drawing large salaries from the corporation; and (4) that there was a distribution of corporate profits to the majority stockholders, the remaining family members raising no objection to this distribution out of corporate earnings of an amount which in effect increased the widows' dividends.

Pointing, too, to the statutory language, Internal Revenue Code, Sec. 115, 26 U.S.C.A. § 115, "Distributions by corporations":

> "The term 'dividend' when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in mon-

dren. She deposited her available cash of $2,000 with the partnership, in return for interest at an agreed yearly rate of 7 percent. Benjamin and two of his sons, Jacob and Harry, contributed to her support a sum which added to the interest would amount to $100 a month. The interest was charged to expense, and the balance was charged on the partnership books to the personal accounts of Benjamin, Jacob, and Harry.

In January, 1929, the business was incorporated. The corporation continued to make the monthly payments to Blanche. In June, 1937, the monthly payments to Blanche were increased to $125. Blanche did not render any services, direct or indirect, to the corporation. The corporation, like the partnership, charged as an expense of the business that portion of the monthly payments which represented interest. The balance was charged to surplus.

In November, 1932, Benjamin died. In May, 1937, his widow died. The 1,032 shares that Benjamin owned were inherited in the proportion of one-seventh to each line of descent.

In December, 1942, Jacob, then president of the corporation, died. His widow, Coralie, acquired 60 shares of stock which represented her one-half of the community interest therein. The 716 shares in his separate estate were willed to his brother, Byron, subject to the usufruct in favor of Coralie. The board of directors authorized a monthly payment to Coralie of $500 for a period of two years, beginning January, 1943. The resolution characterized the payments as a gratuity in recognition of the efforts exerted by her late husband in the development of the corporation. In January, 1945, the board unanimously adopted a resolution authorizing the payment to her of $250 a month, beginning January, 1945, until the further action of the board. The payments were charged against surplus.

In April, 1948, Byron, then president of the corporation, died, leaving a widow, Ruth, and two sons. Ruth received 328 shares of stock, representing her half of the community interest therein. The 776 shares in his separate estate were inherited by his two sons, subject to the usufruct in Ruth's favor. In April, 1948, the board of directors unanimously adopted a resolution that Ruth be paid $22,425.00, payable in monthly installments beginning April, 1948, and ending December, 1948, and for the calendar year 1949 the sum of $6,000 payable at the rate of $500 a month. In January, 1949, the board unanimously voted to continue gratuity payments of $500 a month until the further action of the board. These payments were charged against surplus.

Blanche, Coralie, and Ruth, regularly filed income tax returns. Coralie and Ruth never reported any of the payments as income. Blanche reported only the portion representing interest.

Prior to voting the payments to Ruth and Coralie, the members of the board of directors, who were the owners of a majority of the shares, discussed the proposals with the remaining shareholders, who consented to the payments. No question has ever been raised by any of the shareholders as to the authority of the board to make the payments in question.

The Tax Court determined that the $6,000 received by Ruth in 1950, the $3,000 received by Coralie in each of the years 1947, 1948, 1949, and 1950, and $1340 received by Blanche in 1947, 1948, 1949, and 1950, were distributions of profits taxable to the recipients as dividends.

ey or in other property, (1) out of its earnings or profits accumulated after Feb. 28, 1913, or (2) out of the earnings or profits of the taxable year * * * "

and to the fact that there were earnings and profits available which were consequently the source of distributions, the Tax Court declared, "We cannot escape the conclusion that by legislative definition they were 'dividends' ".

The petitioners, specifying three grounds of error,[2] insist: that the amounts paid were designated by the corporation as, and without dispute in the evidence were, gratuities paid with donative intent within the language and meaning of the applicable authorities;[3] and that to tax them as dividends is to go contrary to the intention of donor and donees, as disclosed by the undisputed testimony of record.

 We do not think so. Whether or not a corporate distribution is a dividend or something else, such as a gift, compensation for services, repayment of a loan, interest on a loan, or payment for property purchased, presents a question of fact to be determined in each case. John Kelley Co. v. Commissioner, 326 U.S. 521, 698, 66 S.Ct. 299, 90 L.Ed. 278; Bogardus v. Commissioner, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32; Limericks, Inc., v. Commissioner, 5 Cir., 165 F.2d 483; Paramount-Richards Theatres v. Commissioner, 5 Cir., 153 F.2d 602; Wilson v. Commissioner, 5 Cir., 219 F.2d 126; Greenspun v. Commissioner, 5 Cir., 156 F.2d 917, 921. To weigh the evidence, draw inferences from the facts, and to choose between conflicting inferences is, of course, the function of the Tax Court, and its determination is not

to be disturbed unless clearly erroneous. Regensburg v. Commissioner, 2 Cir., 144 F.2d 41, certiorari denied 323 U.S. 783, 65 S.Ct. 272, 89 L.Ed. 625; Limericks, Inc., v. Commissioner, supra; Thomas v. Commissioner, 5 Cir., 135 F. 2d 378; United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746, rehearing denied 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147.

Here, the Tax Court, recognizing that the "pattern of family solidarity" which was evident throughout the years lent "considerable force" to taxpayers' characterization of the payments as between the stockholders who did and those who did not receive them as gratuities, nevertheless, after a full consideration of the facts, found that, as between the corporation and the recipients, the payments, were distributions of profits taxable to the recipients as dividends.

██ We think the record supports, indeed requires, this conclusion. There were substantial earnings and profits available during the taxable years as a source for making the payments and, when made, they were charged on the corporation's books to the surplus account. The taxpayers were all shareholders of the corporation at the time they received the payments in question. The payments to taxpayers Ruth and Coralie Lengsfield were consented to by all the shareholders prior to the adoption of the resolutions whereby the payments were voted, and no question has ever been raised by any shareholder of the corporation as to the authority of the board to make the payments. Moreover, the taxpayers-recipients were, as the Tax Court found, majority (63 percent) shareholders, most of the others were

2. "1. The amounts received by Ruth were exempt as a gratuity to a widow of a former officer; in the alternative, only her pro rata share was a dividend."
"2. The amounts received by Coralie were exempt as a gratuity to the widow of a former officer; in the alternative only her pro rata share was a dividend."
"3. The yearly gratuity paid to Blanche, as a dependent relative of all the stockholders, with their consent, is

taxable to her only in proportion to her ownership of the corporation."

3. Ephraim Banks, 17 T.C. 1386; Alice M. Macfarlane, 19 T.C. 9; Louis K. April, 13 T.C. 707; Bogardus v. Commissioner, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32; Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918; Brayton v. Welch, D.C., 39 F.Supp. 537.

close relatives, and two were drawing large salaries from the corporation. We think that, under these circumstances, the payments in question directly respond to the definition of a taxable dividend contained in the Treasury Regulations 111. The fact that the resolutions authorizing the payments characterized them as a "gratuity" for past services is not determinative of the nature of the distribution. Thomas v. Commissioner, supra. Furthermore, there is no requirement that a particular distribution be termed a dividend, or that there be a formal dividend declaration, or that all stockholders share in dividend distributions. Paramount-Richard Theatres v. Commissioner, supra; Regensburg v. Commissioner, supra; Phelps v. Commissioner, 7 Cir., 54 F.2d 289, certiorari denied 285 U.S. 558, 52 S.Ct. 458, 76 L.Ed. 946; Fitch v. Helvering, 8 Cir., 70 F.2d 583; Chattanooga Sav. Bank v. Brewer, 6 Cir., 17 F.2d 79; Christopher v. Burnet, 60 App.D.C. 365, 55 F.2d 527; Lincoln Nat. Bank v. Burnet, 61 App.D.C. 354, 63 F.2d 131.

In the latter case, the court said at page 133:

"It is true that the directors considered it in part as a gift and not as a dividend, but this is not determinative of the nature of the distribution, nor is the fact that the distribution was to some of the shareholders only and not to others, nor that it was divided among the stockholders in proportions other than their respective holdings of stock in the corporation. The other shareholders have not complained of this inequality, and must therefore in this proceeding be deemed to have ratified the distribution. The character of the distribution as a division of profits was not changed by the manner in which it was accomplished, nor by the personal motives which induced the respective stockholders or directors to approve of such action, for it nevertheless remained in contemplation of law a distribution of dividends. It was

made from the earnings or profits of the distributing corporation, and was divided among the stockholders of the distributing company in such proportion as was satisfactory to its directors and stockholders."

The judgment was right. It is affirmed.