**ESTATE OF Carl J. GUENZEL, Deceased, Ernest Usher Guenzel and Carl Stanley Guenzel, Executors, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 15956.**

United States Court of Appeals
Eighth Circuit.

July 22, 1958.

Robert C. Guenzel, Lincoln, Neb., for petitioners.

James P. Turner, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson and A. F. Prescott, Attys., Washington, D. C., were with him on the brief), for respondent.

Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is a petition to review the decision of the Tax Court (opinion reported 28 T.C. 59) which upheld a deficiency assessment of estate tax against the executors of the Estate of Carl J. Guenzel, who will hereinafter be referred to as taxpayers. The assessment was based upon the inclusion of the corpus of the Carl J. Guenzel Trust in the gross estate of Carl J. Guenzel.

Carl J. Guenzel died on March 18, 1951, a resident of Nebraska. An estate tax return was filed and all estate tax due was paid, except on the value of the corpus of the Carl J. Guenzel Trust. Taxpayers have at all times taken the position that the value of this trust was not taxable as part of decedent's gross estate and did not include the value of the trust in the estate tax return. Whether or not the value of the trust created by Carl J. Guenzel constituted part of his gross estate for estate tax purposes is the primary issue for our consideration. An alternate issue, in the event the trust is considered part of decedent's taxable estate, is whether taxpayers are entitled to a deduction under section 812(c) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 812(c), for the value of the Carl J. Guenzel Trust, upon the basis that such assets were previously taxed in the Letitia Guenzel estate.

The undisputed pertinent facts are summarized by the Tax Court as follows:

"On March 14, 1936, Carl J. Guenzel executed an irrevocable trust, known as the Carl J. Guenzel Trust, and on the same date Letitia Guenzel, his wife, executed a similar irrevocable trust known as the Letitia Guenzel Trust. Carl transferred securities and property having a value of $85,068.75 to the trustee named in his trust, The First Trust Company of Lincoln, Nebraska. Letitia transferred securities and property to the same named trustee, having a

value of $85,016.75. Both trust agreements are identical as to form, wording, provisions for the continuance thereof, and disposition of income to a primary life income beneficiary, and to the grantors as secondary life income beneficiaries, and to the same named ultimate beneficiaries.

"The Carl J. Guenzel Trust provided, in part, as follows:

"The Trustee shall dispose of the Trust Estate as follows:

"A. The net income from all property constituting said Trust shall be paid to the Grantor's wife, Letitia Guenzel, during her lifetime, in such installments not less than quarterly that she desires.

"B. Upon the death of Grantor's said wife, if the Grantor is then deceased, the trust estate shall be divided equally between and paid over Outright to the Grantor's sons, C. Stanley Guenzel and Ernest U. Guenzel.

"1. If either of the Grantor's said sons dies before becoming entitled to receive his share of the trust under the foregoing provisions, such share shall be divided equally among and vest in his surviving children, including by right of representation the issue of any deceased child of his. Each such share, however, shall be retained by the Trustee and the principal thereof paid to the beneficiary when he or she attains the age of twenty-five (25) years, with net income to be paid in the meantime to such beneficiary.

"C. Should the Grantor's wife, Letitia Guenzel, predecease the Grantor from and after her death the net income from the trust estate shall be paid to the Grantor during his lifetime in such installments, not less than quarterly, that he desires.

"1. If paragraph 'C' becomes operative then upon the death of the Grantor (his said wife also being then deceased) the trust estate shall be disposed of as provided in paragraph 'B' and subparagraph 'B–1', whichever is applicable.

"The Letitia Guenzel Trust contained the same provisions except that it named Carl J. Guenzel as the primary life income beneficiary and the corpus was to go to the sons on Letitia's death if she survived her husband. Gift tax returns for the calendar year 1936 were filed by both grantors covering the transfers in trust and the gift tax paid on the return filed by Carl Guenzel was $1,573.16.

"Letitia Guenzel died February 8, 1947, and the executors of her estate filed the estate tax return. The return was audited by the Commissioner's agents, which resulted in the inclusion in her gross estate the sum of $99,278.43 with this explanation by the acting internal revenue agent in charge:

"Value of C. J. Guenzel Trust created March 14, 1936 $99,278.43

"The decedent and her husband on March 14, 1936 created reciprocal trusts and in effect the property of decedent was exchanged for that of the husband. It is our view that the decedent be regarded as the creator of the trust created by the husband and was the nominal grantor and the same included in the gross estate as a transfer under Section 811(c) the decedent had the right to the income.

"The executors of Letitia's estate paid the tax with the $99,278.43 included as a part of the gross estate. After Letitia's death Carl received the income from the Carl Guenzel Trust and it was stipulated that he was entitled to receive the same until his death.

"On November 5, 1949, Carl executed a release, relinquishment, and renunciation of all of his right, title, power and interest in and to the Letitia Guenzel Trust. No part of the corpus of that trust is sought to

be included in the estate of the present decedent."

From the foregoing facts it is perfectly clear that under the trust Carl J. Guenzel created he reserved the income from the trust for himself for life in the event he survived his wife, the primary life beneficiary. The reservation of such life income from the trust made the value of the property transferred to the trust includible in decedent's gross estate by virtue of the provisions of section 811(c) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811(c), which provides that there shall be included in the gross estate of a decedent property of which the decedent "has at any time made a transfer * * * by trust or otherwise—(B) under which he has retained for his life * * * (i) the possession or enjoyment of, or the right to the income from, the property * * *."

The trusts here involved were created in 1936. In 1935, the Supreme Court, by five-four decisions, in Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, and Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35, held that a trust, such as here involved, reserving a contingent life estate in the grantor, was not taxable as a transfer intended to take effect in possession or enjoyment after the creator's death. Thus, under the law as interpreted at the time the Guenzel trusts were created, the value of the trust was not includible in the gross estate of either creator. However, in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, decided in 1940, the St. Louis Trust Co. cases were overruled. The Court held that the reservation of a contingent or secondary life estate makes the value of the transferred property taxable to the estate of the grantor as a transfer intended to take effect in possession or enjoyment at or after the grantor's death. The rule announced in the Hallock case was in effect at the time of the death of both Mr. and Mrs. Guenzel, and such rule has been consistently followed. Commissioner of Internal Revenue v. Estate of Church,

335 U.S. 632, 69 S.Ct. 322, 337, 93 L.Ed. 288; Marks v. Higgins, 2 Cir., 213 F.2d 884; Commissioner of Internal Revenue v. Nathan's Estate, 7 Cir., 159 F.2d 546.

In Estate of Church, supra, 335 U.S., at pages 645–646, 69 S.Ct. at page 329, the Court states:

"* * * Hallock thereby returned to the interpretation of the 'possession or enjoyment' section under which an estate tax cannot be avoided by any trust transfer except by a bona fide transfer in which the settlor, absolutely, unequivocally, irrevocably, and without possible reservations, parts with all of his title and all of his possession and all of his enjoyment of the transferred property. After such a transfer has been made, the settlor must be left with no present legal title in the property, no possible reversionary interest in that title, and no right to possess or to enjoy the property then or thereafter. In other words such a transfer must be immediate and out and out, and must be unaffected by whether the grantor lives or dies. * * *"

In our present case, under the authorities just cited, the value of the Carl J. Guenzel Trust on the date of Carl J. Guenzel's death constitutes a part of his gross estate. In Newberry's Estate v. Commissioner, 3 Cir., 201 F.2d 874, 876, 38 A.L.R.2d 514, the court states:

"Normally taxing authorities and courts administering or applying a statute which taxes to a transferor's estate property he has transferred in trust reserving certain powers to himself have no occasion to go beyond the trust instrument in order to identify the transferor. * * *"

We agree with the foregoing statement.

Taxpayers assert that their decedent is not the transferor of the Carl J. Guenzel Trust as Carl J. Guenzel made a bona fide sale of his trust assets to Letitia Guenzel for an adequate and full consideration. Section 811(c) does not tax transfers "in case of a bona fide sale

for an adequate and full consideration in money or money's worth." The Tax Court, in finding that the value of the Carl J. Guenzel Trust constituted part of Guenzel's gross estate, necessarily determined that Guenzel did not make a bona fide sale of his trust assets. In so doing the court reached a permissible conclusion.

In the Newberry's Estate case, supra, where the factual situation was quite similar to that prevailing here, the court, in support of its conclusion that no bona fide sale existed, said (at pages 877–878):

"* * * The 'unity' of action of husband and wife and the 'interdependent' character of their transactions which the Tax Court found are not such circumstances as the Lehman doctrine comprehends. Spouses in mutual confidence and common interest work out together what each is going to do with his own money to provide for their children. In the normal case, which this appears to be, it is a distortion of meaning to say that the action of one spouse is a quid pro quo inducing the action of the other. The only 'consideration' is the historic 'consideration of love and affection' for the dependent members of one's family. Similarity of action occurs because each spouse is confident that they together have arrived at a wise and benevolent decision concerning the future welfare of their children. That is all there is to the 'unity' and 'interdependence' of action revealed by such a record as we have here. Neither the substance of the transaction nor the identity of the actor is revealed as any different from what appears on the face of each trust indenture."

In McLain v. Jarecki, 7 Cir., 232 F. 2d 211, the husband and wife concurrently created substantially identical trusts. The court followed the Newberry case and upheld the trial court's determination that the creation of the one trust was not a bona fide considera-tion for the creation of the other, stating (at page 213):

"* * * These trusts, and the stipulated facts can also be read as articulating a donative state of mind once extant between the McLains. * * *"

In our present case, when we consider the family relationship and the fact that the trusts were created for the benefit of the natural object of each creator's bounty, the court was certainly not compelled to determine that Mr. and Mrs. Guenzel were entering into a business transaction whereby one sold his assets, which he transferred in trust, in consideration of a similar transfer by the other.

The taxpayers next urge that, since the Government assessed and collected from the Letitia Guenzel estate tax upon the value of the trust created by Carl J. Guenzel upon the theory that the trusts were reciprocal, in effect, Letitia was to be considered the grantor of the trust created by Carl J. Guenzel; and the Government can not, in asserting estate tax liability against the Carl J. Guenzel estate, take the inconsistent position that the Carl J. Guenzel Estate should be taxed with the trust Carl Guenzel created. Taxpayers insist that the court should apply principles of equity, fair dealing, and simple justice to the actions of the Commissioner; and that by reason of estoppel, election, or consistency, the Commissioner should not be allowed to change his position as to who was the actual creator of the Carl J. Guenzel Trust. Taxpayers rely upon Goldstein v. United States, 8 Cir., 227 F.2d 1; Vestal v. Commissioner, 80 U.S. App.D.C. 264, 152 F.2d 132; Joseph Eichelberger & Co. v. Commissioner, 5 Cir., 88 F.2d 874; Smale & Robinson, Inc., v. United States, D.C.S.D.Cal., 123 F.Supp. 457; Canada Dry Bottling Co. of Florida v. Fahs, D.C.S.D.Fla., 109 F. Supp. 187.

The factual situation in the cited cases differs materially from the facts in our present case. The cases do not establish that taxpayers here are entitled to the

relief they seek. Mertens Law of Federal Income Taxation, Vol. 10, § 60.14, states: "The courts have frequently dodged the question whether estoppel exists against the Government in tax cases and have intimated that, if applied at all, it will be applied sparingly and with the utmost caution."

In Goldstein v. United States, supra, this court held that the Government was not estopped from denying that taxpayers had overpaid their taxes because the Commissioner had previously determined erroneously that income received by taxpayers from a partnership was not their income but belonged to other partners. We there stated (227 F.2d at page 4):

> "The doctrine of election and estoppel is not inapplicable to the Government and its officers, but it is to be applied with caution. * * * The rule is that the United States is not estopped by the acts or mistakes of its agents or officers which the law does not authorize or permit. * * *."

We also held that the doctrine of election was not applicable.

▆ It is not necessary for us to determine here whether estoppel can ever bar a claim of the Government for taxes, but we need only determine whether the bar exists in the present case. It is well established that the Commissioner is not estopped from correcting a mistake of law. In Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746, the Commissioner had ruled in 1934 and 1938 that taxpayer was exempt from taxation as a club. The Commissioner revoked these rulings in 1945 and directed taxpayer to file returns for 1943 and subsequent years on the basis of his new ruling. In answer to the taxpayer's contention that the Commissioner was equitably estopped from applying the revocation of his previous rulings retroactively, the Court states (353 U.S. at page 183, 77 S.Ct. at page 709):

> "This argument is without merit. The doctrine of equitable estoppel is

not a bar to the correction by the Commissioner of a mistake of law. * * * *"

See also Mertens Law of Federal Income Taxation, Vol. 10, § 60.17.

The contention that the Letitia Guenzel estate was taxable upon the theory that she was to be regarded as the actual creator of the trust of which Carl J. Guenzel was grantor was advanced by the internal revenue agent in charge at Omaha. The executors of Mrs. Guenzel's estate acquiesced and paid the tax upon the basis asserted. The revenue agent made a mistake of law in his determination that the value of the trust created by Carl J. Guenzel should be included in Letitia Guenzel's gross estate. Under the Hallock case, supra, Mrs. Guenzel's estate was chargeable with the value of the trust which she created. The correct, simple, and logical procedure for the revenue agent to have followed in assessing additional estate tax against Mrs. Guenzel's estate would have been to tax her estate upon the trust she created. Since each trust was of practically the same value, substantially the same amount of tax would have resulted regardless of which trust was included.

In Estate of Louise DeWitt Ruxton v. Commissioner, 20 T.C. 487, 494, the court, with reference to the applicability of the Lehman doctrine of reciprocal trusts, states:

> "* * * That concept is based on reason and analysis where the facts and circumstances of a particular case warrant going outside the formal terms of a trust instrument and looking to the reality of the situation, namely, that a person other than the nominal grantor is the actual transferor of property with retained economic interests in or control of the property, thus obtaining the same resultant tax consequences as if such person had done directly what he tried to do by indirection. In our opinion, that doctrine should be applied only when clearly warranted by the particular

facts of a case considered in the light of the decided cases."

The Lehman doctrine has generally been used to reach trusts on the principle of looking to the substance rather than the form when the trusts, on the basis of their language, are apparently free from tax. An Annotation collecting various cases considering estate tax consequences of reciprocal trusts appears in 38 A.L.R. 2d 522.

Since the trust created by each of the Guenzels was by its terms taxable as a transfer against the estate of the grantor of the trust, there was no need to resort to the Lehman doctrine to make the value of the trusts subject to estate tax. Additionally, there is considerable doubt whether the Lehman doctrine can properly be applied to the trusts here involved. The Lehman doctrine was first announced in Lehman v. Commissioner, 2 Cir., 109 F.2d 99, decided in 1940. In the Lehman case the trusts were created by brothers. Brother A created a trust giving Brother B a life use with remainder to Brother B's children, with right of Brother B to encroach upon the principal. Brother B created a similar trust for the benefit of Brother A and his children. The court properly held that under the law of trusts the creation of one trust was the legal consideration for the creation of the other. The trusts did not transfer the property to the natural objects of the creators' bounty, and the trusts were of such a nature as would not ordinarily be created except for a legal consideration.

A number of courts have held that there must be a legal consideration in order that the trust of one settlor may be taxed as the trust of another. In re Lueders' Estate, 3 Cir., 164 F.2d 128; Newberry's Estate v. Commissioner, supra; McLain v. Jarecki, supra. Such appears to be the proper approach to the problem from a trust standpoint. Our decision in Cole's Estate v. Commissioner, 140 F.2d 636, discusses briefly the consideration aspect of the Lehman doctrine, but the real basis for the decision is found in the following language (at page 638):

" * * * Assuming, arguendo, that no specific finding of consideration was made, the court's decision may be sustained on another basis. Each decedent by the trusts created may be regarded as having 'retained for his life * * * the right to income from' the 300 shares which he himself transferred to the trust created by him on the theory of family relationship and equivalents. For, as a result of the terms of the identical and simultaneous trusts and of 'the familial relationship', each decedent 'retained the substance of full enjoyment of all the rights [for life] which previously he had in the property.' Helvering v. Clifford, 309 U.S. 331, 336, 60 S. Ct. 554, 557, 84 L.Ed. 788. * * * "

We have heretofore indicated our view that there was no legal consideration for the creation of the respective trusts. Since there was no bona fide consideration for the establishment of the trusts, no foundation existed for the application of the Lehman doctrine. Moreover, the assets of the trust created by Letitia Guenzel could also doubtless have been properly taxed to her estate upon the reasoning appearing in the quotation from the Cole's Estate case, supra.

It must be conceded that considerable confusion existed under the decisions and regulations, for much of the period here relevant, as to the taxability of trusts such as here involved. See Hollander v. United States, 2 Cir., 248 F.2d 247. Any regulations which are inconsistent with the taxing statute as interpreted by the Supreme Court can be of no validity. Under Hallock and other authorities, heretofore cited, it is established beyond dispute that the trust created by each of the Guenzels was includible as part of the gross estate of the creator at the time of his death under the taxing statutes then in force. The revenue agent's mistaken action in taxing Mrs. Guenzel's estate upon the trust Mr. Guenzel created may well have had an

important bearing in leading Mr. Guenzel to believe that his estate would not be taxed upon the trust he created. Under the Technical Changes Act of 1949, 63 Stat. 891, not particularly relevant here, as it affords relief from additional gift taxes under certain circumstances, Carl J. Guenzel relinquished all interest in the trust created by Mrs. Guenzel. This circumstance is of no legal significance. We are not here concerned with gift tax problems. We do not consider the fact that gift taxes were paid on the 1936 gifts has any bearing upon the result we reach. The payment of a gift tax upon such gifts was apparently justifiable at the time it was made, as such payment occurred before the St. Louis Trust cases were overruled and before the Lehman decision. Gift tax credit was given in the computation of estate tax. In practical effect, Carl J. Guenzel, in relinquishing his interest in the trust created by Letitia Guenzel instead of in the trust he created, was making the same mistake of law as was made by the revenue agent in interpreting the applicable tax law.

The two Guenzel estates are separate taxable entities. We are satisfied that the revenue agent made a mistake of law in taxing the trust created by Mr. Guenzel in Mrs. Guenzel's estate. The Commissioner is not bound by a mistake of law made by one of his agents in another case. Under the authorities heretofore cited the Commissioner is not estopped or barred in any way by reason of the mistake of law made by his agent from assessing the proper tax due from the Carl J. Guenzel estate. We further note that the revenue agent, in collecting the tax from Mrs. Guenzel's estate, made no representation that the same principles would be applied in taxing Mr. Guenzel's estate. In any event, the agent would have no authority to make such a representation. Mr. Guenzel was chargeable with knowledge of the limitations upon the authority of the Government agent with whom he was dealing. See Mertens Law of Federal Income Taxation, Vol. 10, § 60.15.

The record before us supports the Tax Court's conclusion that the doctrines of estoppel, election, and consistency raise no bar to the collection of the tax here involved. The court committed no error of law in upholding the Commissioner's determination that the value of the trust created by Carl J. Guenzel be included in his gross estate.

 This leaves for consideration taxpayers' alternate contention that the taxpayers are entitled to a deduction under section 812(c) of the Internal Revenue Code of 1939 for the value of the assets of the Carl J. Guenzel Trust as property previously taxed to the Letitia Guenzel estate. Section 812(c) provides for the deduction from the value of decedent's estate of "An amount equal to the value of any property (1) forming a part of the gross estate situated in the United States of any person who died within five years prior to the death of the decedent * * * where such property can be identified as having been received * * * from such prior decedent by gift, bequest, devise, or inheritance, or which can be identified, as having been acquired in exchange for property so received."

The record supports taxpayers' contention that the Letitia Guenzel estate was taxed upon the value of the assets of the trust created by Carl J. Guenzel. It is likewise undisputed that Carl J. Guenzel died within five years from the date of the death of Letitia Guenzel. Thus, the availability of the deduction features of section 812(c) depends upon whether the assets of the Carl J. Guenzel Trust were received from Letitia Guenzel and, if so, whether they were received by gift, bequest, devise, or inheritance. Upon this issue the Tax Court states:

"* * * The answer is that the trust property that was transferred to the trustee was decedent's property. He succeeded to his interest in the property by virtue of the trust instrument he executed. A deduction for property previously taxed cannot be allowed unless the property can be identified as having been *received* by decedent from a prior decedent by gift, bequest, devise, or

**256**

inheritance. The trust property here involved was not so received by decedent. Estate of Anna C. Yantes, 21 T.C. 830, affd. [Ohio National Bank v. Commissioner, 6 Cir.] 220 F.2d 754."

We agree. The Yantes case, cited by the Tax Court, supports its conclusion. The taxpayers contend that the statute should be liberally interpreted to carry out the congressional intention that two estate taxes should not be levied upon the same property within five years. The Tax Court in the Yantes case reviews the legislative history of the statute we are considering, and rejects a similar contention made by the taxpayer in that case.

Here, Letitia Guenzel had no more than a life estate in the trust created by her husband. Such interest terminated at her death. Mrs. Guenzel had no interest in, or control of, the disposition of the trust property for any period subsequent to her death. Carl J. Guenzel did not receive any interest in the trust he created from his wife. He acquired the use of the trust assets upon his wife's death, solely because he had reserved such interest in the trust that he created.

■ The result reached appears to be somewhat inequitable. However, any unfairness is offset to a large extent by the fact that the tax assessed against Letitia Guenzel's estate would have been substantially the same if the value of the trust that she created had been included in her gross estate, instead of the value of the trust created by her husband. Tax deductions do not turn upon general equitable considerations. Deductions depend upon legislative grace and are allowed only to the extent authorized by statute. Deputy v. DuPont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; Greenspon v. Commissioner, 8 Cir., 229 F.2d 947, 954. The deduction here claimed does not come within the terms of section 812(c) even if the statute is liberally construed. The court properly denied the deduction.

Affirmed.