Estate of Herman Silverman, Deceased, Jeanette Sternlieb, Executrix, and Rebecca Silverman, Surviving Wife v. Commissioner.
Estate of Silverman v. Commissioner
Docket No. 85905.
United States Tax Court
T.C. Memo 1963-146; 1963 Tax Ct. Memo LEXIS 197; 22 T.C.M. (CCH) 694; T.C.M. (RIA) 63146; May 28, 1963
Burton A. Schenley, 450 Seventh Ave., New York, N. Y., for the petitioners. Gerald J. Robinson, for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income tax for the years 1955, 1956, and 1957 in the *198 respective amounts of $3,388.28, $2,596.08, and $2,797.54, which are contested by petitioners Rebecca Silverman and the Estate of Herman Silverman, who is hereinafter referred to as decedent. The sole issue is whether amounts distributed to decedent by a corporation of which he was majority stockholder in exchange for part of his stock constitute dividends taxable as ordinary income. Some of the facts have been stipulated. Findings of Fact The facts contained in the stipulation and the exhibits thereto are hereby found accordingly. Decedent and petitioner Rebecca Silverman filed their original joint income tax returns for the years 1955, 1956, and 1957 and their amended joint income tax returns for 1955 and 1956 with the district director of internal revenue, Upper Manhattan District, New York, New York. Decedent was the father of Sol Silverman, Harold Silverman, and Morris Silverman. Maid-Rite Novelty Corporation, hereinafter called the corporation, was a family corporation in which decedent held the majority of the stock and his sons and wife held the remainder. On June 27, 1955, decedent and the corporation entered into an agreement with respect to the purchase of *199 decedent's stock in the corporation, which agreement was carried out according to its terms until decedent's death. Simultaneously with the execution of the agreement, decedent entered into an escrow agreement and an employment agreement with the corporation. Decedent was elected president and chairman of the board of the corporation in 1955, 1956, 1957, and 1958 by the unanimous vote of his sons. Pursuant to the first contract, decedent would be entitled to receive dividends on and vote so much of the stock transferred to the escrowees as had not been paid for. Decedent's son, Sol Silverman, understood this contract to provide that decedent "still owned stock which was not paid for in toto." Subsequent to the contracts and up to his death, decedent spent approximately half of his time at the corporation's place of business, was very much in evidence when he was not on the premises, and influenced the affairs of the corporation. When decedent entered into the contracts he intended to remain active in the business by, in effect, "looking over the boys' shoulders" and helping them run the business. Decedent had a paternal feeling for his sons and he and his sons had the *200 normal feelings of affection toward one another. The relationship between decedent and his sons and among the sons themselves was such as to result in a well-organized business as far as management was concerned. Any disagreements between decedent and his sons never reached serious proportions and were smoothed out. On November 16, 1956, decedent executed an insurance agreement on behalf of the corporation as president thereof. The escrowees holding decedent's stock in the corporation were his agents acting on his behalf and after his death became the agents of his executrix and acted pursuant to her direction. During the years 1954 to 1958, inclusive, the corporation did not formally declare or pay any dividends. For its taxable years ending December 31, 1955, December 31, 1956, December 31, 1957, and December 31, 1958, the corporation had earned surplus and undivided profits in the amounts of $167,876.44, $174,010.35, $186,845.31, and $197,227.39, respectively. None of decedent's stock was redeemed by the corporation before his death. Escrowees, and not the corporation, acquired his stock. The distributions to decedent from the corporation in 1955, 1956, and 1957 *201 were essentially equivalent to dividends. Opinion No brief has been filed on petitioners' behalf. No objections to respondent's proposed findings and no findings proposed by petitioner have been filed. See Rule 35(e) (3), Tax Court Rules of Practice. We have found the facts essentially as proposed by respondent. The issue is whether amounts distributed to decedent by a corporation of which he was sole [1] stockholder were distributions in the nature of dividends and taxable to him as ordinary income. Respondent contends that the transactions were not redemptions under section 317 of the 1954 Code; and that, even if they were, they are equivalent to dividends as described in sections 301 and 302 of the Code. The ground for contending that there was no redemption is that sale or exchange of the stock was not complete in the tax years in issue, the stock having, as provided in the contracts, been held in escrow throughout the period; and the equivalence to a dividend is said to follow from the fact that decedent remained the controlling, in fact, the sole stockholder [2] both before and after the surrender of the shares. *202 Whether we apply the so-called "net result" test, see Flanagan v. Helvering, 116 F. 2d 937 (C.A.D.C. 1940), affirming a Memorandum Opinion of this Court, or that of examining the respective relationships of stockholders to each other and to the corporation after the redemption and the corporate business purpose of the transaction, see Bradbury v. Commissioner, 298 F. 2d 111, 116, 117 (C.A. 1, 1962), affirming a Memorandum Opinion of this Court, what happened here must not be viewed as a true sale or redemption at all, but as the essential equivalent of a distribution of large amounts of accumulated corporate profits to the individual who was in effect the dominant stockholder and hence they are taxable as ordinary income. Lengsfield v. Commissioner, 241 F. 2d 508 (C.A. 5, 1957), affirming a Memorandum Opinion of this Court. Decision will be entered for the respondent. Footnotes
1. See footnote 2, infra.↩
2. By applying the attribution rules of Sec. 318, I.R.C. 1954↩. See J. Milton Sorem, 40 T.C. - (May 3, 1963).