JOSEPH GARRISON AND IDA GARRISON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5405–67.   Filed May 15, 1969.

*Nathan D. Rollins*, for the petitioners.
*Harvey N. Shapiro*, for the respondent.

282

## OPINION

This case presents the question whether a purported compensatory bonus payment to the principal stockholder-officer-employee of a closely held corporation in liquidation, which the respondent and the corporation subsequently agreed was excessive in part, may be treated as a distribution in liquidation and therefore entitled to capital gains treatment under section 331(a)(1).[2] The precise issue herein has not been previously litigated.

Petitioner Joseph Garrison was the principal stockholder, officer, and employee of Produce. By the taxable year involved, Produce had ceased doing business and was being completely liquidated. In the course of that liquidation, Joseph was voted and was paid the sum of $40,000 as "a bonus for services * * * which shall include the 2% of sales due him." Produce deducted that amount as compensation paid. Upon the subsequent audit of the corporation's Federal income tax return, it was agreed that $15,000 of that amount was excessive and a corresponding deduction was disallowed. Petitioners now contend that, as a result of such disallowance, the $15,000 should be considered as having been received by Joseph as a distribution in liquida-

[2] All references are to the Internal Revenue Code of 1954, as amended.

tion of his stock interest in Produce. Respondent contends that the disallowance did no more than indicate that the $15,000 was not "a reasonable allowance for * * * compensation for personal services" under section 162(a)(1) and that, against the factual background of this case, the amount should be treated as the parties originally characterized it and not as a distribution in liquidation.

Initially, petitioners assert that, by reason of the prior disallowance, respondent is estopped from claiming that the excessive payment did not constitute a liquidating distribution. We find this contention to be without merit. In the instant case, different parties are involved and respondent's determination has not been the subject either of prior litigation or of a binding agreement to which the corporation or petitioners were parties. Under these circumstances, the doctrine of equitable estoppel—which, in any event, has found scant acceptance in the field of taxation—is inapplicable. *Guenzel's Estate* v. *Commissioner*, 258 F. 2d 248 (C.A. 8, 1958), affirming 28 T.C. 59 (1957) ; *Powers Photo Engraving Co.* v. *Commissioner*, 197 F. 2d 704 (C.A. 2, 1952), affirming per curiam as to this issue 17 T.C. 393 (1951) ; *Smale & Robinson, Inc.* v. *United States*, 123 F. Supp. 457 (S.D. Cal. 1954) ; *William Fleming*, 3 T.C. 974, 984 (1944), affd. 155 F. 2d 204 (C.A. 5, 1946). Compare *Automobile Club* v. *Commissioner*, 353 U.S. 180 (1957). Accordingly, we turn to a determination of the substantive issue confronting us.

Various unsuccessful attempts have been made to characterize amounts disallowed as excessive compensation as nontaxable receipts in the hands of the recipients. Thus, such amounts have been refused the status of gifts. *Lengsfield* v. *Commissioner*, 241 F. 2d 508 (C.A. 5, 1957) ; *Smith* v. *Manning*, 189 F. 2d 345 (C.A. 3, 1951) ; *Stanley B. Wood*, 6 T.C. 930 (1946). Similarly, such payments have not been considered repayments of loans. *D. J. Jorden*, 11 T.C. 914 (1948). Likewise, an attempt to classify such a payment by one subsidiary corporation to a second subsidiary corporation as a constructive dividend to the parent and a contribution to capital of the second subsidiary has also failed. *Sterno Sales Corporation* v. *United States*, 345 F. 2d 552 (Ct. Cl. 1965) ; cf. *Zeunen Corporation* v. *United States*, 227 F. Supp. 952 (E.D. Mich. 1964).[3]

---

[3] There is a further line of cases denying the recipient of excessive compensation a deduction of an equivalent amount in the year of receipt. *Healy* v. *Commissioner*, 345 U.S. 278 (1953) ; *Fleischer* v. *Commissioner*, 158 F.2d 42 (C.A. 8, 1946) ; *Mary B. Brauer, Et Al., Executors*, 6 B.T.A. 579 (1927). These decisions, and the accompanying insistence that the compensation categorization remains valid, were made in the context of the "claim of right" doctrine and the application of the annual accounting concept. *North American Oil* v. *Burnet*, 286 U.S. 417 (1932). They have no application to a situation such as is involved herein where the issue is whether the amount should properly be considered in another category of taxable income.

A careful reading of these cases reveals that excessive compensation does not, as a matter of law, retain that characterization for tax purposes in the hands of the recipient. Nor must it necessarily be considered something other than compensation. Neither the label initially affixed by the taxpayer nor the failure of the respondent to provide an alternative label for the disallowed payment is conclusive.[4] The touchstone for decision is a factual determination as to the actual nature of the payment in question under all the circumstances, free from any compulsory inhibitions stemming from the designations of the parties. As the Court of Appeals stated in *Lengsfield* v. *Commissioner, supra:*

Whether or not a corporate distribution is a dividend or something else, such as a gift, compensation for services, repayment of a loan, interest on a loan, or payment for property purchased, presents a question of fact to be determined in each case. * * * [See 241 F. 2d at 510.]

Respondent's regulations recognize the factual foundation for such a determination in the case of distributions by an ongoing corporation. Secs. 1.162–7(b)(1) and 1.162–8, Income Tax Regs.[5] We perceive no valid reason for not applying the rationale of those regulations in a situation involving the liquidation of a corporation. Cf. *Robert Gage Coal Co.*, 2 T.C. 488, 500–502 (1943); *Jas J. Gravley*, 44 B.T.A. 722, 728 (1941). The standard to be applied is not unlike the "net effect" test employed in determining whether distributions are essentially equivalent to a dividend. Cf. e.g., *Woodworth* v. *Commissioner*, 218

---

[4] Indeed, even if the respondent had characterized the disallowance as a dividend, we would not be bound thereby. Cf. *Livingston* v. *United States*, 67 Ct. Cl. 536 (1929); *George M. Hayner* v. *United States*, 62 Ct. Cl. 189 (1926).

[5] Sec. 1.162–7 Compensation for personal services.

(b) * * *

(1) Any amount paid in the form of compensation, but not in fact as the purchase price of services, is not deductible. *An ostensible salary paid by a corporation may be a distribution of a dividend on stock. This is likely to occur in the case of a corporation having few shareholders, practically all of whom draw salaries. If in such a case the salaries are in excess of those ordinarily paid for similar services and the excessive payments correspond or bear a close relationship to the stockholdings of the officers or employees, it would seem likely that the salaries are not paid wholly for services rendered, but that the excessive payments are a distribution of earnings upon the stock.* An ostensible salary may be in part payment for property. This may occur, for example, where a partnership sells out to a corporation, the former partners agreeing to continue in the service of the corporation. In such a case it may be found that the salaries of the former partners are not merely for services, but in part constitute payment for the transfer of their business. [Emphasis added.]

Sec. 1.162–8 Treatment of excessive compensation.

*The income tax liability of the recipient in respect of an amount ostensibly paid to him as compensation, but not allowed to be deducted as such by the payor, will depend upon the circumstances of each case. Thus, in the case of excessive payments by corporations, if such payments correspond or bear a close relationship to stockholdings, and are found to be a distribution of earnings or profits, the excessive payments will be treated as a dividend.* If such payments constitute payment for property, they should be treated by the payor as a capital expenditure and by the recipient as part of the purchase price. In the absence of evidence to justify other treatment, excessive payments for salaries or other compensation for personal services will be included in gross income of the recipient. [Emphasis added.]

F. 2d 719 (C.A. 6, 1955), affirming a Memorandum Opinion of this Court; *Flanagan* v. *Helvering*, 116 F. 2d 937 (C.A.D.C. 1940), affirming a Memorandum Opinion of this Court; see *Levin* v. *Commissioner*, 385 F. 2d 521, 524 (C.A. 2, 1967), affirming 47 T.C. 258 (1966).

Produce adopted the plan of liquidation on October 26, 1963, sold its operating assets on November 5, filed the plan of liquidation with the Internal Revenue Service on November 20, voted to pay the amounts in question on January 27, 1964, made payment therefor on March 9, and completed the process of liquidation on July 31. This sequence of events leaves no doubt that Produce embarked upon and continued to conclusion a bona fide process of complete liquidation, during the period relevant to the transaction involved herein, and that any distribution during that period to Joseph, in his capacity as a shareholder, would have been treated as a distribution in liquidation under section 331(a)(1). *Kennemer* v. *Commissioner*, 96 F. 2d 177 (C.A. 5, 1938), affirming 35 B.T.A. 415 (1937); *Estate of Charles Fearon*, 16 T.C. 385 (1951); *S. J. Blumenthal*, 12 B.T.A. 1205 (1928); *S. B. Dandridge, Et Al.*, 11 B.T.A. 421 (1928). Cf. sec. 1.332–2(c), Income Tax Regs; compare *Herbert A. Nieman & Co.*, 33 T.C. 451 (1959).

We recognize that neither the full bonus payments nor the amounts determined to be excessive bear a clearly discernible relationship to the stockholdings of Joseph and Murray in Produce. Nevertheless, in the context of dealings between the members of a family and their closely held corporation, the non-prorata character of a payment to the shareholders does not, standing alone, preclude characterization of the payment as a dividend. *Lengsfield* v. *Commissioner*, 241 F. 2d at 510; *Barbourville Brick Co.*, 37 T.C. 7 (1961); *William C. Baird*, 25 T.C. 387, 397 (1955).

In the instant case, the recipients of the payments were father and son, the son receiving more than his prorata share. The petitioners herein were the owners of 96 percent of the outstanding stock of Produce and holders of two of the three seats on the board of directors. Under such circumstances, acceptance of the suggestion that the payments lack the characteristics of a distribution in liquidation, because not pro rata with respect to the stock, when the shareholders and directors are all members of an immediate family, would require us to fly in the face of a "pattern of family solidarity" which so often affects the conduct of closely held family corporations. See *Lengsfield* v. *Commissioner*, 241 F. 2d at 510. We see no reason why Joseph's receipt of less than a protata share should, in itself, taint the distribution he did receive by making it inappropriate for treatment as a liquidating dis-

tribution if the distribution was in fact paid to him because he was a stockholder.[6]

We are also not unaware of the fact that the payments in question were treated by both Produce and petitioners as compensation. But it is important to note that we are not confronted with a situation where respondent has accepted the compensation classification for all purposes and petitioners are now trying to disavow the consequences of the form of the transaction which they have chosen. *Higgins* v. *Smith*, 308 U.S. 473, 477–478 (1940); *Television Industries, Inc.* v. *Commissioner*, 284 F. 2d 322, 325 (C.A. 2, 1960), affirming 32 T.C. 1297 (1959); *New England Tank Industries, Inc.*, 50 T.C. 771, 776–777 (1968), on appeal (C.A. 1, Dec. 26, 1968); *Estate of Rudolph F. Rabe, Sr.*, 25 B.T.A. 1242 (1932). Here, respondent, albeit with some ambiguity,[7] disputed the tax consequences to Produce flowing from the compensation designation and the petitioners promptly acceded to his position.[8] Under these circumstances, we think it proper to disregard the labels and determine the substantive character of the payment involved.

Only after Produce had determined to liquidate, ceased doing business, and sold its operating assets was it determined that any bonuses should be paid. Moreover, there was obviously very little, if any, correlation between the bonus paid to Joseph in 1964 and the bonus shortages for prior years: Joseph's bonus was on its face related only to 1963 and, in terms of 1963 standing alone, the bonus was in excess of the amount applicable to that year. Although the record herein is not entirely satisfactory, we are persuaded on the basis of the facts before us and the reasonable inferences to be drawn therefrom that Produce designated the payment involved herein as salary simply "in order to lessen its income tax," when it was not in fact salary. See *Bone* v. *United States*, 46 F. 2d 1010, 1011 (M.D. Ga. 1931). We therefore conclude that, under the particular circumstances of this case, the payment was made to Joseph because of his status as a controlling shareholder. Consequently, it constituted an amount distrib-

---

[6] Respondent has not argued that for tax purposes a prorata amount might be taxable to Joseph as a liquidating distribution, with a resulting gift to Murray.

[7] The stipulation of facts simply states that the $15,000 "was excessive compensation and therefore not deductible." Petitioners on brief assert that the report of examination of Produce's tax return labeled this amount as a dividend, but that report is not in evidence.

[8] This is to be contrasted with the situation that existed in *Bone* v. *United States*, 46 F. 2d 1010 (M.D. Ga. 1931), where an ongoing corporation was involved and the taxpayer consistently maintained throughout the litigation that the payments were compensation, arguing only alternatively for dividend treatment in the event that the court disagreed with his primary position.

uted in complete liquidation of Produce within the meaning of section 331(a)(1).

To reflect the other items disposed of by agreement between the parties,

*Decision will be entered under Rule 50.*